**FORD MOTOR COMPANY et al., Appellants,**

v.

**Irene S. HENDERSON et vir., Appellees.**

**No. 7469.**

Court of Civil Appeals,
Beaumont.

Sept. 6, 1973.

Rehearings Denied Nov. 1, 1973.

Finis E. Cowan, Baker & Botts, B. Jeff Crane and Daniel A. Hyde, Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., for appellants.

W. James Kronzer, W. W. Watkins and Tom Edwards Kronzer, Abraham, Watkins & Steely, Houston, Tex., for appellees.

STEPHENSON, Justice.

This is a products liability case. Trial was by jury and judgment rendered for plaintiffs upon the verdict. The parties will be referred to by name or as they were in the trial court. Plaintiffs are Mrs. Irene S. Henderson and her husband. Defendants are the Ford Motor Company, hereafter referred to as "Ford", and the dealers, hereinafter referred to as "Snelling".

Plaintiffs alleged that while Mrs. Henderson was driving their Lincoln automobile, when she exerted pressure upon the brake pedal, the automobile accelerated and she was compelled to steer the automobile intentionally into a light pole. She was seriously injured.

Plaintiffs alleged a cause of action upon theories of strict liability in tort, defective design, and defective assembly of designated parts of the automobile. The jury found that the design of the air filter housing on this automobile was defective and that such defective design was a producing cause of this accident. The jury failed to find that the gasket on this automobile was defectively installed by Ford's employees before it was delivered to Snelling and failed to find that such gasket was defectively installed at the time this automobile was sold by Snelling to plaintiffs.

Defendants have a series of points of error complaining of the refusal of the trial court to allow them the defenses of contributory negligence and voluntary assumption of risk.

Defendants' pleadings contained allegations that if the vehicle in question did malfunction, that Mrs. Henderson discovered such malfunctioning a substantial period of time before her injuries occurred and was negligent in failing to stop the vehicle by a brake application, by putting the gear shift in neutral, or by switching off the ignition. Plaintiffs' motion in limine was sustained and defendants were ordered by the trial court not to bring such matters before the jury in any form or manner, directly or indirectly. Defendants' requested issues, submitting those defensive matters, were denied.

■ Defendants concede that a defense of negligence in failing to discover the defect or to guard against the possibility of its existence is not available under the established law in the State of Texas, citing McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.1967), and Shamrock Fuel & Oil Sales Co. v. Tunks, 416 S.W.2d 779 (Tex.1967). However, the essence of their argument is that negligence on the part of Mrs. Henderson after the discovery of the defect is available as a defense. The uncontroverted evidence shows Mrs. Henderson continued to drive her car some nine-tenths of a mile after such discovery before driving into the light pole.

Justice Norvell in the *Tunks* case, supra, quotes Prosser, Law of Torts (3d ed.) 656, as follows:

" 'There has been ostensible, and quite superficial, disagreement over whether contributory negligence is available as a defense where the action is one for breach of warranty. A few decisions have said flatly that it is not. The greater number have said quite as flatly that it is. The conflict is, however, more apparent than real. If the cases are examined, it readily appears that those which refuse to allow the defense have been cases in which the plaintiff negligently failed to discover the defect in the product, or to guard against the possibility of its existence. They are entirely consistent with the general rule that such negligence is not a defense to an action founded upon strict liability. Those which have permitted the defense all have been cases in which the plaintiff has discovered the defect and the danger, and has proceeded nevertheless to make use of the product. They represent the form of contributory negligence which consists of deliberately and unreasonably proceeding to encounter a known danger, and overlaps assumption of risk. They are quite consistent with the general rule that this is a defense to strict liability. There are only a few cases which have recognized the distinction; but it seems quite clear that it is made in fact.' " (416 S.W.2d at 783)

Also quoted in that opinion is Dean John Wade's article, "Strict Tort Liability," from 19 Sw.L.J. 5, 21 (1965):

" 'The cases appear to be in disagreement as to whether contributory negligence of the plaintiff bars his recovery in an action for strict products liability. In general, however, they can be reconciled by adverting to the customary distinction between contributory negligence and assumption of risk. If the plaintiff's negligence was in failing to discover the unsafe condition of the product he can

usually recover; if his negligence was in continuing to use the product after learning of the dangerous condition, his recovery is usually barred.'" (416 S. W.2d at 783)

In effect, the Supreme Court held in the *Tunks* case that the jury findings as to contributory negligence did not constitute a bar to recovery in a strict liability case because, as submitted, such issues included "improper use" of the product as well as continued use of the product after discovering that it was dangerous. As submitted, it was not possible for the trial court or appellate courts to determine which of the two findings the jury was actually making.

In the concluding paragraph of the *Tunks* case, supra, 416 S.W.2d at 786, this statement is made:

"'Consumer reliance upon the integrity of the manufacturer and his product is the foundation of warrant liability. It therefore appears that, short of actual knowledge of a defect [or circumstances charging him with knowledge as a matter of law], and continued use of the product with such knowledge, the consumer's failure to conform to the standard of care of the reasonably prudent man when using the defective product may merely be a manifestation of his reliance upon both the reputation of the manufacturer and his product.' Comment, Contributory Negligence as a Defense to Warranty Actions, 39 Temple Law Quarterly, 361, 363 (1965–1966)." (footnote omitted)

Mrs. Henderson testified in person and by deposition in detail as to the facts surrounding this incident. She approached the freeway (610) from Woodway and made a normal stop before entering the freeway. She accelerated to get on the freeway, and at that point the car began to operate abnormally. When she took her foot off the accelerator and the car did not slow down, she knew that all was not well. She put her foot on the brake and it did not stop the car the way she thought it should. She drove her car off the freeway at the first exit, which was South Post Oak. She applied her brakes as she made the curve getting off the freeway to get down to the exit speed (35 m.p.h.) but not hard enough for the purpose of attempting to bring the car to a stop. She touched the accelerator with her foot to see if it was up. She pumped her brakes hard two times, but the car continued to pick up speed. She did not know about shifting a car into neutral. Although she knew about shutting off the motor, she did not do it because she had seen her husband struggle with a car at thirty miles per hour when the power steering was out. She headed for the utility post which was about nine-tenths of a mile from the point where the car began to malfunction. She estimated the car's speed to be fifty miles per hour when it struck the post.

Notwithstanding the order of the trial court granting plaintiff's motion in limine, Ford offered expert testimony which included motion pictures to show the results of tests made to demonstrate how a vehicle would stop if the rear barrels of the carburetor were wedged open in the position the plaintiffs had alleged. According to plaintiffs' theory a piece of gasket became disengaged from the air filter housing and fell into the barrel of the carburetor, causing a butterfly valve of the carburetor to be locked open to prevent letting up on the gas. Tests were made with an automobile similar to the one driven by Mrs. Henderson by a driver who was a very small man. A fifth wheel was attached to the car to measure the stopping distance. All of the tests were made with a gadget designed to hold the valve open in a position in which it would be if a piece of gasket was lodged in the valve. At forty miles per hour, stopping distance was 120 feet; at forty-five miles per hour, it was 140 feet; at fifty miles per hour, it was 186 feet; and at sixty miles per hour, the stopping distance was 297 feet.

Defendants argue that the jury could have concluded under the evidence that

Mrs. Henderson discovered the defect and instead of promptly bringing her car to a stop, continued to operate it until the consequences of the defect became so serious that the vehicle became uncontrollable. They contend that the car could have been stopped by putting it in neutral, by turning off the key, or by applying the brakes when the defect was first discovered.

We have concluded that failure to use ordinary care in continuing to use a product after the discovery of a defect is available as a defense in this state.

"Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntary and *unreasonably* proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds *unreasonably* to make use of the product and is injured by it, he is barred from recovery." 2 Restatement of Law of Torts (2d ed. 1965) § 402A at 356. (emphasis supplied)

It was error on the part of the trial court in granting plaintiffs' motion in limine which effectively stripped these defendants of their right to plead, prove, and submit to the jury their defensive issues.

In plaintiffs' brief, it is argued that no reported case was found in which such a defense was held to be applicable to the conduct of a motor vehicle operator after the event developed. The defendants have cited this court no such case and an exhaustive study by the members of this court has revealed none. Likewise, we have found no case holding that this type of defense is not available, so apparently this is a case of first impression.

Plaintiffs also argue that defendants are attempting to extend the doctrine of "misuse" to include contributory negligence and that Mrs. Henderson was not guilty of "misuse" of this product as a matter of law. We do not attempt to predict how a jury would have answered the defensive issues if the trial court had submitted them. However, there is evidence in this record which would have supported answers favorable to defendants, so the issues were not settled as a matter of law.

We have considered the other points of error and, finding no merit to them, they are overruled.

Reversed and remanded.

## ON MOTION FOR REHEARING

DIES, Chief Justice.

I respectfully dissent. Since this is a case of first impression, what is a good rule for today's problems need not be influenced by stare decisis. In a strict liability case, the majority opinion requires the product consumer to make the proper choice after discovery of a defect in the product to avoid injury, or be denied recovery because of contributory negligence. This comes pretty close to declaring contributory negligence as a defense in such cases.

Here is why I think this to be unwise Ford Motor Company, or any other car manufacturer, knows that its products will be legally used by all kinds of persons, different ages, different intellects, different training, even different reactions. To require of them ordinary conduct after discovery of a defect goes a long way, I think, in weakening the rule of strict liability and the rationale behind it.

Of course, had Mrs. Henderson voluntarily used the car in question after knowledge of its problems, Ford should have this defense. Or, if she had "misused" the car and the misuse had caused her injuries, Ford should have this defense.

But, the most that can be said here is that under trying circumstances, unknown before to her, and not caused by her, Mrs. Henderson might have prevented her injuries by making a wiser choice of her options. This, in my judgment, should not be a defense in strict liability cases.