George **ENSOR** and Katherine Ensor, Plaintiffs-Appellants,

v.

Penneye **HODGESON**, Cycle City Engineering Corp. and Kawasaki Motors Corp., U. S. A., Defendants-Respondents.

No. 41534.

Missouri Court of Appeals, Eastern District, Division Two.

March 10, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1981.

Joseph B. Dickerson, Jr., St. Louis, for plaintiffs-appellants.

Paul S. Brown, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for defendant-respondent Penneye Hodgeson.

Godfrey, Vandover & Burns, Inc., Samuel T. Vandover, St. Louis, for defendant-respondent Cycle City.

GUNN, Judge.

Plaintiffs, parents of deceased Christopher Ensor, appeal from a jury verdict for all defendants in this wrongful death action. Plaintiffs' minor son was operating a Kawasaki motorcycle purchased from defendant Cycle City when he was struck from the rear by an automobile driven by defendant Hodgeson. Negligence was alleged against Hodgeson; recovery was sought against Cycle City and Kawasaki on strict liability grounds for a defect in the motorcycle. We reverse the judgment for Hodgeson, and affirm the verdicts in favor of Cycle City and Kawasaki.

The accident occurred on April 27, 1972, at about 6 p. m., in the northbound lanes of Interstate 55 near the Carondelet Boulevard exit in the City of St. Louis. I-55 is a divided highway with three lanes for northbound traffic at that point. Chris Ensor was operating his Kawasaki motorcycle in the middle lane of the northbound lanes. Mrs. Hodgeson recalled that Ensor passed

her automobile about two miles south of where the accident occurred; she was then in the right hand lane and Ensor was in the middle lane as he passed. Ensor proceeded out of her view. Mrs. Hodgeson subsequently changed lanes to the middle lane to pass slower traffic. The next time she recalled seeing Ensor was when she was about 150 feet behind him. The motorcycle appeared to be moving and the rider was leaning forward over the bike. However, she realized that the bike seemed to be stopped, although she at no time observed a brake light and did not recall Ensor having his feet on the ground. She applied her brakes and attempted to swerve to the left but skidded into the back of the motorcycle, knocking Ensor over the handlebars. The road was dry, visibility was good, and Mrs. Hodgeson testified that there was nothing obstructing her view. I-55 is straight and flat for a distance considerably greater than 150 feet prior to the point of impact.

Arthur E. Bush was the only other witness to the accident to testify. He stated that he was driving northbound in the right hand lane and that Ensor's motorcycle passed him in the center lane. He further testified that as it passed, the motorcycle engine was "purring" smoothly but when Ensor was about 500 to 700 feet in front of Bush, he heard the engine "cut out". Bush saw Ensor attempt to kick start the motorcycle while it continued to coast along. He said the motorcycle slowed to a very slow speed, but no brake light came on. As Bush, who had also slowed down, got closer to the motorcycle, he heard an automobile approaching from behind in the center lane. He heard the screeching of tires as the automobile—Mrs. Hodgeson's vehicle—came along side him and then struck the rear of the motorcycle. The collision occurred about ten feet in front of Bush to his left, and he testified that the motorcycle was still rolling slowly just before impact. He further testified that there were no vehicles in the far left lane to prevent Mrs. Hodgeson from steering or swerving into that lane to avoid Ensor.

Plaintiffs testified that their son had informed them just before his departure from home shortly before the accident that a problem with his motorcycle had been solved by Cycle City. He told them that his cycle had been "cutting out" but that Cycle City believed it was caused by his heavy key ring turning the ignition switch to the "off" position; that removing keys was the solution.

Plaintiffs' petition against Kawasaki and Cycle City alleged that paint had chipped off the inside of the motorcycle's gas tank and had clogged the fuel system, causing the motorcycle to "cut out" and that the paint chipping was a result of a defective design.

Jury verdict was in favor of all defendants.

Plaintiffs allege numerous instances of error. They argue that the court erred in defining "negligence" with regard to the minor decedent as failure to use the highest care, instead of giving MAI 11.04, defining the negligence of a minor. They complain of various flaws with Instruction Number 10 submitted by defendant Hodgeson on decedent's contributory negligence. They assert the trial court erred when it sustained Hodgeson's counsel's objection to a certain portion of plaintiffs' closing argument. Plaintiffs argue that there was insufficient evidence to support the contributory fault instruction submitted by Kawasaki and Cycle City. Further error is charged in the admission into evidence of certain photographs of decedent's motorcycle. And finally, plaintiffs insist they should receive a new trial because of an allegedly prejudicial remark made by counsel for Cycle City while questioning one of plaintiffs' witnesses.

■ The trial court properly gave MAI 11.03 with regard to the negligence of the minor decedent instead of MAI 11.04, which defines a minor's standard of care. Although the decedent was only sixteen years old at the time of the occurrence, he is held to the "highest degree of care" standard imposed on all motor vehicle operators. § 304.010, RSMo 1978; *Hewitt v. Masters*, 386 S.W.2d 9 (Mo.1964).

Defendant Hodgeson submitted the issue of decedent's contributory negligence by Instruction Number 10 as follows:

Your verdict must be for the Defendant, Penneye Hodgeson on Plaintiffs' claim for damages against her if you believe:

First, either:

Chris Ensor failed to keep a careful lookout, or

Chris Ensor stopped his motorcycle in a lane reserved for moving traffic, or

Chris Ensor suddenly slowed his motorcycle on the highway without giving an adequate and timely warning of his intention to slow, or

Chris Ensor allowed his stalled motorcycle to remain on the traveled portion of the highway and

Second, Chris Ensor, in any one or more of the respects submitted in the paragraph First, was thereby negligent, and

Third, such negligence of Chris Ensor directly caused or directly contributed to cause any damage plaintiffs may have sustained.

■ Plaintiffs contend that there was insufficient evidence to support three of the four disjunctive submissions of contributory negligence. The only submission plaintiffs do not challenge is "failed to keep a careful lookout". In determining whether there was evidence to support each of the submissions of contributory negligence, we view the evidence in the light most favorable to defendant Hodgeson unless it conflicts with her own. *Butler v. Hicks*, 554 S.W.2d 449 (Mo.App.1977).

In asserting that the motorcycle was not stopped, plaintiffs cite Mr. Bush's testimony that it was rolling at time of impact. They argue that the only evidence of stopping came from defendant Hodgeson and that her testimony was so equivocal in that regard as to be insufficient to support the stopping instruction.

■ Plaintiffs isolate one of Hodgeson's answers during cross-examination to illustrate that she was uncertain whether she thought the motorcycle was stopped:

Q. What I'm trying to find out is what is it that you saw that made you think it was stopped.

A. I really don't know. I just—there was nothing there. It seemed like he was stopped. When I realized that, I did what I said previously.

The foregoing answer would indicate uncertainty as to whether the motorcycle had stopped. However, this testimony viewed in a favorable light and with Mrs. Hodgeson's other testimony reflecting a firm belief that the motorcycle had stopped provided sufficient evidentiary basis to submit "Chris Ensor stopped his motorcycle in a lane reserved for moving traffic."

■ Plaintiffs contend that the evidence was insufficient to submit the proposition that "Chris Ensor suddenly slowed his motorcycle on the highway without giving adequate and timely warning of his intention to slow." Plaintiffs are correct in this contention. There was no evidence that the motorcycle suddenly slowed. Mr. Bush testified that after its engine "cut out", the motorcycle continued to coast along. At no time did anyone see a brake light come on. Neither did Mrs. Hodgeson give any indication that there had been a sudden slowing of the motorcycle. She testified that though her view was unobstructed she did not consider the motorcycle until she saw it stopped about 150 feet from her—too late for her to avoid the collision. The record is destitute of evidence that the motorcycle suddenly slowed.

■ It is a fundamental precept that when an instruction submits in the disjunctive two or more assignments of negligence, the instruction is erroneous unless the evidence is sufficient to support all of the assignments. *Miller v. Scholl*, 594 S.W.2d 324 (Mo.App.1980); *Bunch v. McMillian*, 568 S.W.2d 809, 811 (Mo.App.1978). The word "suddenly" is the key word in this disjunctive clause, taken from MAI 17.11, *see Koehler v. Schott*, 426 S.W.2d 677, 680 (Mo. App.1968), and submitting it to the jury without factual basis in the record was

prejudicial error requiring reversal as to defendant Hodgeson.

We will discuss the remainder of the points raised by plaintiffs relating to defendant Hodgeson, as they may recur upon retrial.

■ Plaintiffs complain of the final disjunctive submission "Chris Ensor allowed his stalled motorcycle to remain in the traveled portion of the Highway." They argue that there is no evidence for this submission, that it leaves out the word "standing" that appeared in the instruction approved in *Hofstra v. Schriber*, 475 S.W.2d 44 (Mo. 1972), and that it improperly submits the same issue that was submitted by "Chris Ensor stopped his motorcycle in a lane reserved for moving traffic."

We believe that the evidence does support the factual assertion contained in the submission—it is undisputed that Chris Ensor was operating his motorcycle in a lane reserved for moving traffic, and he remained in that lane until the collision occurred. However, this submission is not an MAI instruction. Its source is *Hofstra* where the Supreme Court approved an instruction that submitted that "defendants allowed the stalled truck to remain standing on the traveled portion of the highway." In *Hofstra* there was no other submission of negligence. The evidence in *Hofstra* was that defendants left their disabled vehicle parked on the road for some unspecified length of time and that plaintiff collided with it. Mrs. Hodgeson's counsel states that the word "standing" in the instruction was intentionally omitted because it was not certain that it would properly describe a situation involving a two wheel motorcycle. Defendant Hodgeson suggests that "standing" is an unimportant word in the instruction, that the word "sitting" could have been used, and it would not have changed the import of the submission. We appreciate the semantic problems occasioned because a motorcycle was involved here. But in any event, we fail to see how this submission differed from the above mentioned submission "Chris Ensor stopped his motorcycle in a lane reserved for moving traffic",

(from MAI 17.20), inasmuch as it was defendant Hodgeson's theory that the decedent was negligent by stopping on the traveled portion of the highway when he could easily have pulled off onto the shoulder when the motorcycle commenced to "cut out". The two submissions describe the same allegedly negligent behavior. Rule 70.02(b), Mo.R.Civ.P., provides that when MAI contains an applicable instruction, such instruction shall be given to the exclusion of any other on the same subject. On the facts in this case, we believe the jury was redundantly instructed on the issue in somewhat of an overkill. The MAI submission was applicable and exclusive.

■ One allegation of error pertaining solely to defendant Hodgeson remains. Plaintiffs' verdict directing instruction against Hodgeson only submitted her "failure to keep a careful lookout." During closing argument plaintiffs' counsel commented: "Obviously, if Penneye Hodgeson had been looking, she could have slowed up earlier. She could have stopped, she could have gone over on the left . . . ."

Hodgeson's counsel objected: "I will object to that your Honor. There's no instruction concerning any of that failure to keep a lookout as the sole instruction."

The Court: "Sustained."

Plaintiffs' counsel made no further record on this objection. While this point might not arise on retrial, we note that when "failure to keep a lookout" is the sole submission counsel has the right to argue failure to see and failure to avoid collision by any means supported by the evidence. *Lovelace v. Reed*, 486 S.W.2d 417 (Mo.1972). Failure to take some action that could have been taken to avoid a collision is an element of proximate cause and may be argued.

Defendant Hodgeson argues that the evidence shows that she did in fact swerve and so argument on her failure to swerve was properly precluded. While Mrs. Hodgeson stated that she "swerved" to try to avoid hitting the motorcycle, other evidence shows that her skid marks merely veered slightly to the left but that the impact

occurred in the center lane. Thus, counsel for plaintiffs was clearly within permissible bounds by arguing that if Hodgeson had been keeping a proper lookout, she would have had more time to react and make a proper swerve or lane change and avoid a collision.

■ Plaintiffs next allege error in the admission of certain photographs of decedent's motorcycle. The photos are alleged to be immaterial and irrelevant, an "attempt to offer inconsistent proof" and to inject the issue of the contributory negligence of decedent in maintaining his motorcycle. This complaint, however, has not been properly preserved for appellate review. At trial, plaintiffs' counsel objected only generally to the admission of the photos; his objection to three particular photos was stated: "Your Honor, I object to DD, EE and FF." Objections to the remaining photos were phrased in similarly general terms. Thus, nothing is presented for our review. *Myers v. Bi-State Development Agency,* 567 S.W.2d 638 (Mo. banc 1978).

Prior to the offer of the photos into evidence, plaintiffs' counsel objected to the entire line of inquiry regarding the possibility of other problems with the motorcycle, because it was "inconsistent" with previous evidence introduced by Kawasaki. Apparently, counsel thought that this objection continued to oppose introduction of the photos. The record does not so reflect. When the photos were subsequently offered, the aforementioned general objections were voiced without explanation of any sort. In a strict liability case, the defendant manufacturer may, of course, attempt to show that if any problem existed with the product it was not so when it left the factory. It appears that Kawasaki was attempting to do just that in this case, and the photos were relevant and material on the issue of what caused the motorcycle to "cut out". The so-called "inconsistent proof" was contained in a portion of a deposition of plaintiffs' expert which was read into evidence by Kawasaki. Such was not "proof" of Kawasaki but was merely read to point out deficiencies in plaintiffs' theory of causa-

tion. No error appears in the admission of the photographs.

■ The next allegation of error is that there was insufficient evidence to have given Instruction No. 11, patterned after MAI 32.23, submitted by Cycle City and Kawasaki. This instructs on the "contributory fault" defense to a strict liability action. *See Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362, 365 (Mo.1969). The gist of the defense is that the user of the product knew and appreciated the danger involved in using the product but nevertheless voluntarily and unreasonably proceeds to use it.

Plaintiffs' testimony establishes that their son had been having trouble with his motorcycle. They further testified that he told them that the source of the problem had been discovered—his heavy key ring had been turning the ignition off—and that he had removed his motorcycle key from the key ring to eliminate the problem. In the light most favorable to the defendants, defendants' expert's testimony tended to discount the key ring theory of the problem and tended to show that Chris Ensor was aware of other mechanical problems with his cycle. Thus, there is evidence to support the proposition that Chris Ensor knew that his cycle was prone to "cut out" while running on the highway, and there is evidence from which a jury could reasonably infer that he knew the problem had not been remedied. This is sufficient to support a contributory fault instruction.

■ But plaintiffs argue that there is no evidence to show that their son was aware of the specific defects that they allege caused the motorcycle to cut out. We agree. But knowledge of the precise engineering explanation of the defect is not necessary. It is sufficient that the user realizes that there is a problem with the product that renders it dangerous to use. Certainly, it is reasonable to infer that Chris Ensor, a sixteen year old of at least normal intelligence, was aware that he would be in a dangerous situation if his motorcycle stalled on the highway.

Both Cycle City and Kawasaki argue that Chris Ensor's failure to steer his motorcycle to the side of the road after the engine "cut out" further supports giving the contributory fault instruction. As previously decided, evidence of decedent's actions, or lack of action, after the engine "cut out" supports a contributory *negligence* instruction with regard to defendant Hodgeson. We need not decide whether his behavior after the engine "cut out" supports a contributory *fault* instruction with regard to the strict liability claims against Cycle City and Kawasaki. Our approval of the instruction rests on the evidence of Chris Ensor's knowledge of the danger prior to operating the motorcycle.[1]

█ Finally, plaintiffs urge error in failing to grant a new trial based on alleged improper interrogation of a witness by counsel for Cycle City. Reference was made to the name of plaintiffs' attorney's partner, who at the time of trial had been convicted of a crime and was awaiting sentencing.[2] Objection to reference of the partner's name was sustained, and plaintiffs' attorney was specifically asked by the trial court if he wanted a mistrial. He was twice given five minute opportunities to ponder and consult with his clients, after which he specifically informed the court that he did not want a mistrial. Although there was attendant publicity with the partner's sentencing prior to the jury's verdict, we find no error in failing to grant a new trial on this issue. Plaintiff received all the relief he sought and cannot now charge error. *State v. Pulis*, 579 S.W.2d 395, 400 (Mo.App.1979); *State v. Porter*, 538 S.W.2d 888, 890 (Mo.App.1976); *Burian v. Dickens*, 527 S.W.2d 26, 28 (Mo.App.1975). It was plaintiffs' considered choice to gamble on the jury verdict and not seek mistrial. *See*

*Gilmore v. Union Construction Co.*, 439 S.W.2d 763, 766 (Mo.1969). Nor do we find any manifest injustice or miscarriage of justice in the trial court's failing to find plain error in plaintiffs' favor on this issue. Rule 78.08, Mo.R.Civ.P.

Judgment for defendants Cycle City and Kawasaki affirmed. Judgment for defendant Hodgeson reversed and cause remanded as to her.

PUDLOWSKI, P. J., and WEIER, J., concur.

---

1. We point out, though, that *Ford Motor Co. v. Henderson*, 500 S.W.2d 709 (Tex.Civ.App. 1973), cited by Kawasaki, was reversed by the Texas Supreme Court, *Henderson v. Ford Motor Co.*, 519 S.W.2d 87 (Tex.1974). The court stated that a negligent failure to choose the best escape from the throes of peril is not a voluntary encounter with the danger and will not bar a strict liability action.

2. There was no reference to the fact that the partner had been convicted of a crime, and the mention of the partner's name was somewhat in response to plaintiffs' attorney's directing attention to the fact that he had not personally been present in his office when certain depositions had been taken but that another acted in his stead.