The remand order in this case is quite open-ended. Therein the District Court states:

The status of the case, therefore, is that there is no proposed reorganization plan pending, so further proceedings in bankruptcy will be necessary. Perhaps sufficient time has elapsed since February 8, 1989, to require that the order be vacated so a new approach can be taken in accordance with any changed circumstances. That, of course, is a decision for the bankruptcy court to make.

District Court Order at 14. The order obviously contemplates not only the possibility of further factual development but also the exercise of considerable discretion by the Bankruptcy Court on remand, and therefore cannot be considered a final order reviewable by this Court.

Because we have no jurisdiction to consider KCC's appeal, the appeal must be, and hereby is, dismissed.

**Orville WILLIAMS, Appellant,**

v.

**PRO–TEC, INC. and Grant & Roth Plastics, Inc., Appellee.**

No. 89–1123.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1990.

Decided July 12, 1990.

and appeal to the district court is taken under the 'with leave' provision of section 158(a)." *Bowers v. Connecticut Nat'l Bank*, 847 F.2d 1019, 1021–22 (2d Cir.1988); *accord In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1395 & n. 5 (5th Cir.1987).

**346**

Rex Carr, St. Louis, Mo., for appellant.

Miles J. Zaremski, Chicago, Ill., for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Orville Williams appeals from the district court's [1] judgment entered on a jury verdict in favor of Pro–Tec, Inc. and Grant & Roth Plastics, Inc. (Grant). We affirm.

While playing racquetball on November 22, 1982, Williams, a St. Louis dentist, turned to face his opponent as the latter was preparing to strike the ball. The re-

1. The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri.

turn shot struck Williams' right eye, injuring it severely. At the time of his injury, Williams was wearing a lensless eye guard that had been manufactured by Grant and marketed by Pro–Tec. As a result of the injury, Williams was required to undergo enucleation of his right eye some two years later, resulting in twenty percent loss of Williams' peripheral vision and complete loss of his depth perception.

Williams sued Grant and Pro–Tec under theories of strict products liability, negligence, willful and wanton conduct, and false misrepresentation. Grant and Pro–Tec pleaded the defense of contributory fault. On appeal, Williams asserts that the district court erred in instructing the jury on contributory fault and assumption of risk and in allowing certain testimony from expert witnesses.

## I. Jury Instruction

Williams contends that the district court erred in giving the following instruction to the jury:

[Y]our verdict must be for defendants, if you believe:

First, plaintiff knowingly participated in the sport of racquetball using the eyeguard when he knew the eyeguard would not prevent serious eye injuries; and

Second, plaintiff thereby assumed the risk of injury; and

Third, such assumption of the risk directly caused or directly contributed to cause any damage plaintiff may have sustained.

Instruction No. 16. Williams contends that there was no evidence of his actual knowledge that the eye guard would not prevent serious eye injury or that a racquetball could penetrate the eye guard and injure his eye.

■ The defense of contributory fault requires the defendant to prove that the plaintiff "discovered the defect in the product and was aware of the danger, but nevertheless proceeded unreasonably to make use of the product and was injured by it." *Means v. Sears, Roebuck & Co.,* 550 S.W.2d 780, 787 n. 6 (Mo.1977) (en banc) (citation omitted). Defendants in a

strict products liability case need not show that the plaintiff knew of the exact design defect in order to prove contributory fault. *Ensor v. Hodgeson,* 615 S.W.2d 519, 525 (Mo.Ct.App.1981). Rather, "[i]t is sufficient that the user realizes that there is a problem with the product that renders it dangerous to use." *Id.*

■ The circumstantial evidence in this case indicates that Williams knew that the eye guard would not prevent serious eye injuries. Williams had been playing racquetball since 1979 and was an "A"-level player, the highest level in competitive tournament play. In play at this level, the ball travels at high speeds. The Pro–Tec advertisement that Williams had read in a racquetball magazine before he purchased the Pro–Tec eye guard stated:

PUT YOUR HAND OVER ONE EYE AND READ THIS.

This is a test. To show you what it would be like if you lost your eye in a racquetball accident. * * *

* * * [T]o be brutally frank, it's possible. The ball travels at speeds clocked as high as 142 m.p.h. And it can do a lot of damage if it hits your eye just right.

The advertisement also stated that the eye guard is made from a "tough, virtually indestructible polycarbonate" and will "stop a lot of accidents." There was no claim in the advertisement, however, that the eye guard would prevent all accidents. Given Williams' own testimony regarding the proficiency he had developed in playing racquetball, the jury could properly infer that he must have known of the hazards that existed notwithstanding his use of the eye guard.

■ Williams also asserts that the district court erred by instructing the jury on assumption of risk. Instruction No. 17 stated:

The defendants contend that the plaintiff assumed the risk of injury from the danger which plaintiff contends caused his injury. In order to establish this defense the defendants must prove:

First: That the dangerous condition was open and obvious, or that the plain-

tiff knew of the dangerous condition, and;

Second: That the plaintiff voluntarily exposed himself to the danger and was injured thereby.

Williams asserts that assumption of risk is not a defense to strict liability under Missouri law. Alternatively, Williams maintains that if the assumption of risk instruction was defining an element of contributory fault, it should have been included in Instruction No. 16.

The Missouri Court of Appeals has observed that the standards for establishing contributory fault are similar to those for establishing assumption of risk. *Harper v. Namco, Inc.*, 765 S.W.2d 634, 637 (Mo.Ct. App.1989). As we read Instruction No. 17, it complements and further defines the elements of contributory fault as set forth in Instruction No. 16. Giving due deference to the district court's interpretation of Missouri law, we conclude that the district court did not err in instructing the jury on assumption of risk, nor did it err in setting the instruction forth separately.

## II. Expert Witnesses

■ Williams' next contention is that the district court erred with regard to the testimony of two expert witnesses. One of these witnesses was Milo Bell, a mechanical engineer called by Pro–Tec. Bell had conducted tests to determine the amount of force with which a racquetball could strike the human eye when the ball was shot at various speeds at a person wearing the Pro–Tec eye guard. He testified that the eye guard would slow the ball and that, in his opinion, the Pro–Tec eyeguard was not unreasonably dangerous. Williams objected to Bell's testimony because Bell's expertise lay in mechanical engineering and accident reconstruction, not in medicine or ophthalmology.

A district court's ruling on the admissibility of expert testimony is reviewed under an abuse of discretion standard. *See, e.g., Fox v. Dannenberg*, 906 F.2d 1253 (8th Cir.1990); *Federal Crop Ins. Corp. v. Hester*, 765 F.2d 723 (8th Cir.1985). "The broad and generally stated test for deter-

mining the qualifications of a given witness to testify as an expert is whether his knowledge of the subject matter is such that his opinion will most likely assist the trier of fact in arriving at the truth." *Holmgren v. Massey–Ferguson, Inc.*, 516 F.2d 856, 857–58 (8th Cir.1975). *See also Fox*, 906 F.2d at 1256–57; *Carlsen v. Javurek*, 526 F.2d 202, 211 (8th Cir.1975). Bell disclaimed any expertise in the force necessary to injure the eye. He testified only with respect to his findings regarding the factor by which the eye guard reduced the force that a racquetball exerted upon a simulated eyeball at different speeds. The record shows that Williams' counsel questioned Bell extensively about his lack of medical training and knowledge during cross-examination and, at least from what the cold pages of the transcript reveal, effectively attacked the credibility of Bell's testimony. We agree with the district court that Bell's self-acknowledged lack of medical expertise went to the weight rather than to the admissibility of his opinion that the Pro–Tec eye guard was not unreasonably dangerous. *Fox*, 906 F.2d at 1257.

■ Williams also asserts that the district court improperly restricted him from thoroughly cross-examining Martin Hogan, a professional racquetball player. Pro–Tec's magazine advertisement stated that the eye guard had been scientifically tested to prevent the injury a racquetball can cause when it strikes the eye. Williams asked Hogan if the Pro–Tec advertisement was truthful, assuming that no test had been conducted to determine whether or not a ball could penetrate the opening of a Pro–Tec eyeguard with sufficient force to damage the eye. The district court sustained objections to this question. Williams contends that Hogan's answer would have had a bearing on the misrepresentation issue and the credibility of Hogan's direct examination testimony that the eye guard was not unreasonably dangerous.

The scope of cross-examination is within the discretion of the district court. *Villanueva v. Leininger*, 707 F.2d 1007, 1010 (8th Cir.1983) (per curiam). Expert testi-

mony may be properly excluded if the jury, being apprised of all the relevant facts, is equally able to draw the asserted conclusion. *Ellis v. Miller Oil Purchasing Co.,* 738 F.2d 269 (8th Cir.1984). In this case, the jury was shown the advertisement and was in a position to draw its own conclusion about its truthfulness from evidence in the record. Accordingly, the district court did not err in refusing to allow further cross-examination on this point.

The district court's judgment is affirmed.