Jerome WILD, Plaintiff–Respondent,

v.

CONSOLIDATED ALUMINUM CORPO-
RATION, Defendant–Appellant.

No. 52980.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 12, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 16, 1988.

Application to Transfer Denied
July 26, 1988.

Paul S. Brown, Brown, James & Rabbitt, P.C., St. Louis, for defendant-appellant.

Theodore H. Hoffman, Hoffman & Wallach, P.C., St. Louis, for plaintiff-respondent.

GRIMM, Judge.

In this jury tried case, Consolidated Aluminum Corporation appeals from a $200,000 judgment in favor of plaintiff Jerome Wild for personal injuries sustained in a fall from a ladder manufactured by defendant.

There are four allegations of error. First, that the trial court erred in denying Consolidated's motion for mistrial, which was requested on the ground that Wild's attorney's remarks, during closing argument, were highly prejudicial and constituted a request for a judicial admission. We disagree, because the statement did not request a judicial admission of a fact and therefore Consolidated was not entitled to a mistrial. Second, that the trial court erred in denying Consolidated's motion for mistrial when Wild's counsel stated that the Court of Appeals had agreed with his expert witness, since the statement was prejudicial and outside of the record. Although the statement was improper, the trial court was in a better position to gauge the impact of the comment, as well as to determine what relief was required, and we are not persuaded that the trial court abused its discretion. *Kinser v. Elkadi,* 674 S.W.2d 226, 237 (Mo.App.S.D.1984). Third, that the trial court erred in denying Consolidated's motion for a directed verdict and for giving the jury Wild's verdict directing instruction, because Wild failed to make a submissible case on a theory of strict liability of defective product. We disagree, because a review of the evidence in the light most favorable to Wild discloses that he made a submissible case. Fourth, that the trial court erred in refusing to give Consolidated's contributory fault instruction. We disagree, because a contributory fault instruction is proper only when there is evidence of awareness or knowledge of the precise danger in the defect asserted by the plaintiff, who thereafter voluntarily assumes the risk of *that* danger; there was no evidence that Wild knew that the feet of the ladder were defective and nevertheless proceeded to climb the ladder. *Uder v. Missouri Farmers Association, Inc.,* 668 S.W.2d 82, 89 (Mo. App.W.D.1983). We affirm.

A review of the facts reflects that Wild borrowed a twenty-four foot aluminum extension ladder from his next door neighbor; he had done this two or three times before. He examined the ladder to make sure everything was working properly and found that it was. He testified that he noticed that the two plastic or composition feet on the bottom of the ladder were "sort of a bluish color", that there were serrations in the plastic, and that the pads did not appear to be worn.

Wild set up the ladder on his asphalt driveway in front of the garage door. The driveway was reasonably level, clean, and was not cracked. The upper portion of the ladder was resting slightly on the gutter, which was roughly twelve feet above the ground and the extension either touched or was within an inch or two from the roofline, which was about five feet above the gutter. Wild extended the ladder approximately three feet less than its full length and locked it into place. The ladder's feet were placed about four feet from the garage door.

Wild tested the ladder by going up three or four steps and bouncing on it to see if it was secure. After finding the ladder did not give or move, he climbed up the ladder to approximately five or six rungs from the top; his feet were placed just above the gutterline and his head was either at or above the roofline. He looked over the top of his roof to see if the kids had thrown anything onto the roof and then looked to his left to see if there were any leaves or obstructions in the gutter. Wild then moved his shoulders slightly, to look down at the gutter, when the ladder began to abruptly slide outwards away from the garage door. He tried to reach for the gutter but missed it. After deciding that he was going to fall, Wild left the ladder and fell "sort of off backwards." He said that the ladder came down flat on the asphalt, sliding a considerable distance from the garage floor. He further testified that there was a dent in the gutter from the ladder striking it, and a marking on the shingle from where the ladder slid down the shingle. Wild stated that there were broken pieces of the plastic feet laying on the ground near the ladder. The neighbor who owned the ladder also saw pieces of the plastic feet lying on the driveway and in the grass.

At trial John C. Georgian, a Professor of Mechanical Engineering at Washington University, testified as Wild's expert. He went to Wild's house and looked at the scene of the accident and inspected the ladder, but never saw the original feet of the ladder. Georgian had Wild set up the ladder as it was at the time of the accident and took some measurements. Georgian determined that the ladder was set at an angle of 69.968 degrees, which is "approximately okay" and was within safe limits for using the ladder.

Georgian testified at trial that friction of the feet is what keeps a ladder from sliding. He explained that a coefficient of friction is necessary to let one know how much downward force is required to move an object sideways. Georgian stated that in order to determine the coefficient of friction for the ladder he would need to have the original feet. However, he fur-

ther explained that he could calculate what coefficient of friction is necessary to keep a ladder from slipping. After doing a statistical analysis, he stated that a coefficient of friction of .3148 was necessary to keep the ladder from slipping out with Wild at a certain point; a greater coefficient of friction is necessary when one is at the top of the ladder than when one is at the bottom. He further stated that according to his analysis, when the ladder slipped, it did not have a coefficient of friction value of .314 and thus was unreasonably dangerous for use under the circumstances.

At trial, Georgian was asked a hypothetical question which included the facts Wild testified to concerning the ladder and the scene of the accident; also, he was asked to assume that the ladder had a coefficient of friction of less than .314. He was then asked his opinion if the ladder was defective when manufactured, and was unreasonably dangerous when put to an anticipated use. Consolidated's counsel objected to the question because Georgian did not know what the coefficient of friction was for the ladder feet, did not know what material the feet were made of, and that there was no foundation for the question. The objection was overruled. Georgian answered that the ladder was defective as manufactured and unreasonably dangerous.

On cross-examination, Georgian was asked if in a previous deposition he had said that he "just picked the coefficient of friction number for a piece of vinyl out of the air." Georgian answered that he did not for this case. Consolidated's counsel then said, "In the other case you had it and you said "I just assumed—." Wild's counsel then objected on the grounds that it was out of context, and said, "That was another case. Let the record show it went to the Court of Appeals and the Court of Appeals agreed with him." Consolidated's counsel moved for a mistrial on the ground of the impropriety of injecting into the present case a result of another case, and asked to have Wild's counsel's remarks stricken. The court denied a mistrial, but

told the jury to disregard the remarks made by Wild's attorney.

At the close of all the evidence, Consolidated's counsel filed a motion for directed verdict on the ground that Wild failed to make a submissible case of defective product and that plaintiff was contributorily at fault as a matter of law. The motion was denied.

■ On appeal, Consolidated first alleges that the trial court erred in denying its motion for a mistrial following a statement made by Wild's counsel in closing argument. There Wild's counsel told the jury that whether Wild should have been on the 6th, 10th, or 12th ring was out of the case and that there was no instruction on that. Consolidated objected, saying that the "remark about what rung he should have been on as all out of the case, that's commenting on the evidence." In response, Wild's counsel stated "To save my time, are you suggesting that by the mere fact he was on a given rung that he should win or lose this case? Is that what you are telling me?" Consolidated's counsel then asked to go to the bench and requested a mistrial on the ground that Wild's counsel asked him in front of the jury "to make certain admissions, judicial admissions, of factual admissions in front of the jury and that's highly improper." The judge denied the request for mistrial; sustained the objection; told the jury to disregard the last statements made by Wild's attorney; and that they would be bound by the instructions as the court has given them.

■ Consolidated argues that the remarks of Wild's counsel constituted a request for a judicial admission of a fact. A judicial admission has been defined as a more or less formal act done during a judicial proceeding which waives or dispenses with the production of evidence and concedes for litigation purposes that a certain proposition is true. *Hewitt v. Masters,* 406 S.W.2d 60, 64 (Mo.Div. 2 1966). Or, as Wigmore says, a judicial admission "is, in truth, a substitute for evidence, in that it does away with the need for evidence." 9 Wigmore, Evidence § 2588 (Chadbourn rev. 1981).

Consolidated urges us to find that the statement "are you suggesting that by the mere fact that he was on a given rung that he should win or lose this case" is a request for a judicial admission of a fact. We do not. The statement does not ask that any fact be admitted. Rather, if the statement is read to be a request for an admission of some sort, it would be more of a request concerning a conclusion of law than an admission of fact. Here, the trial court sustained Consolidated's objection, even though the stated objection—improper request for admission of a judicial fact—should have been overruled. Since Consolidated was not entitled to have its objection sustained, it therefore was not entitled to a mistrial on that ground. Point denied.

■ Consolidated's second point is that the trial court erred in denying its motion for mistrial after Wild's counsel made a remark during Consolidated's cross-examination of Wild's expert witness. Consolidated asked Georgian if, in a deposition in another case, he had stated he "picked the coefficient of friction number for a piece of vinyl out of the air." Georgian replied that he did not for this case. Consolidated then stated, "In the other case you had it and you said, 'I just assumed'." Wild's counsel then objected and stated "that's out of context. That was another case. Let the record show it went to the Court of Appeals and the Court of Appeals agreed with him." Consolidated argues that this statement was prejudicial, outside of the record, and improperly injected an alleged opinion of the Court of Appeals on the credibility of Georgian, thus, warranting a mistrial.

A mistrial is a drastic remedy which should only be granted where the incident is so grievous that the prejudicial effect can be removed in no other way. *Herndon v. Albert,* 713 S.W.2d 46, 48 (Mo.App.E.D. 1986). Also, whether to grant a mistrial is within the sound discretion of the trial court, and appellate review of the trial court's decision is limited to verifying that the trial court has not abused its discretion. *Id.* at 48.

Although Wild's statement was improper, we cannot say that it was so prejudicial as to require a mistrial. Wild never mentioned the name of the case to which he was referring, and the statement was made in response to Consolidated's remarks about Georgian's deposition in a previous case. The trial court sustained the objection and told the jury to disregard counsel's last remarks. This was sufficient, in the trial judge's discretion, to remove any possible prejudicial effect, without the need of a mistrial. *See, Schell by Schell v. Keirsey*, 674 S.W.2d 268, 272 (Mo.App.W.D. 1984). We find no abuse of discretion and the point is denied.

■ Consolidated's third point is that the court erred in denying its motion for a directed verdict at the close of all the evidence and in giving the jury Wild's verdict directing instruction since Wild failed to make a submissible case on a theory of strict liability of defective product. Specifically, Consolidated argues that Wild's case and instruction were not supported by credible evidence of probative value by an expert witness, because the expert's testimony was without proper foundation in that he never examined the ladder feet, did not know the composition of the feet, and never figured out the coefficient of friction for these specific feet.

Numerous cases have established the standard for review when the submissibility of a plaintiff's case is challenged on appeal following a verdict for the plaintiff. Typical of these is *M.P. Industries, Inc. v. Axelrod* 706 S.W.2d 589, 593 (Mo.App.E.D. 1986), where we said that in such a situation, "the court must consider all the evidence in a light most favorable to the plaintiff, take his evidence as true and give him the benefit of all reasonable inferences arising from the evidence."

Wild testified that the pads on the bottom of the ladder did not appear to be worn in any respect. Also, Wild's neighbor, who owned the ladder and from whom he borrowed it, said that he "bought it new" in 1974, that he had not made any alterations or changes to it; that the pads on the bottom of the ladder were made of a hard plastic and were in good condition; and the pads "were not worn down." Following the fall, the neighbor noticed that some of the plastic on the ladder feet had broken off; before he used it again, he made some new feet of another material and put them on the ladder.

■ The original feet that were on the ladder were not available for inspection by either Wild or Consolidated. They had apparently been discarded when the owner of the ladder put on new feet. Wild's expert testified that it was not necessary to examine the original feet to determine the coefficient of friction necessary to prevent the ladder from slipping, since that information could be correctly determined from appropriate calculations. Based on those calculations, he determined that the feet did not have the required coefficiency of friction to hold the ladder under the circumstances that existed. To require, as Consolidated suggests, that before Wild could make a submissible case, his expert would have to have examined "the feet" to determine that they did not have the proper coefficient of friction would be to require the impossible. The law does not compel that which is impossible (lex non cogit ad impossibilia). Wild's expert testimony was sufficient to allow a jury to determine that the feet of the ladder were in a defective condition unreasonably dangerous when put to a reasonably anticipated use. Wild made a submissible case, his verdict directing instruction appropriately complied with MAI 25.04 [1978 Revision], and therefore Consolidated's third point is denied.

■ Consolidated's final point on appeal is that the court erred in refusing to give its instruction which apparently was tendered on a theory that Wild voluntarily assumed a known risk. The assumed risk, according to the motion for new trial, was "it is common knowledge [that] if you go beyond the point of contact on a ladder the feet will kick out;" in Consolidated's brief, it alleges "that there was evidence that plaintiff placed himself above the ladder's contact point."

Contributory *negligence* was not recognized as a defense to strict liability. *Keen-*

er v. *Dayton Electric Manufacturing Company*, 445 S.W.2d 362, 365 (Mo.Div. 2 1969). However, a defense of contributory *fault*, "which consists of voluntarily and unreasonably encountering a known danger," was acknowledged. *Id.* at 365. Although contributory *fault* "is in the nature of 'assumption of risk,'" *Williams v. Ford Motor Company*, 454 S.W.2d 611, 618 (Mo. App.E.D.1970), whether one calls the defense contributory fault or assumption of risk is immaterial. As was said in *Higgins v. Paul Hardeman, Inc.*, 457 S.W.2d 943, 948 (Mo.App.E.D.1970), "[r]egardless of the name of the defense, ... the gut issue is not whether the defect was discovered but whether the product was unreasonably used after discovery of the defect."

Here, Consolidated argues that its contributory fault instruction should have been submitted because there was evidence that Wild voluntarily assumed a known risk by placing his feet above the contact point. For a contributory fault instruction to be proper, "there must be evidence of awareness or knowledge of the precise danger in the defect asserted by the plaintiff, who thereafter voluntarily assumes the risk of *that* danger. [Emphasis in original.]" *Uder v. Missouri Farmers Association Inc.*, 668 S.W.2d 82, 89 (Mo.App.W.D. 1983). Wild asserted that the defect of the ladder was that the plastic feet were in a defective condition unreasonably dangerous. Consolidated, in order to submit a defense of contributory fault, had to have evidence that Wild was aware or had knowledge that the plastic feet did not have a sufficient coefficient of friction and thereafter assumed the risk of that danger. No such evidence was presented and therefore the trial court correctly refused the instruction. Point denied.

The judgment is affirmed.

SIMON, P.J., and CRANDALL, J., concur.