Darryl ARNOLD and Linda Arnold,
Plaintiffs–Respondents,

v.

INGERSOLL–RAND COMPANY,
Defendant–Appellant.

No. 74471.

Supreme Court of Missouri,
En Banc.

June 2, 1992.

Rehearing Denied June 30, 1992.

J. William Newbold, Dudley W. Von Holt, St. Louis, William H. Robinson, Jr., Charles M. Allen, Richmond, Va., for defendant-appellant.

Gary R. Sarachan, Allan R. Belliveau, James F. Koester, St. Louis, plaintiffs-respondents.

BENTON, Judge.

Defendant Ingersoll–Rand Company appealed the decision of the Circuit Court of St. Louis City in a product liability case to the Court of Appeals, Eastern District,

which affirmed the trial court. This Court granted transfer on the specific questions whether plaintiffs' "failure to warn" claim was submissible and whether the circuit court erred in refusing to instruct the jury on Darryl Arnold's contributory fault. This Court now reverses on these two issues and remands for further proceedings in accordance with this opinion.

Defendant manufactures a five-horsepower air compressor which was used at the auto repair shop where plaintiff Darryl Arnold worked. Within the air compressor, an automatic pressure switch turns the machine "off" when the pressure of the air stored exceeds a preset level, and "on" when the air pressure falls below another level. In the act of turning "on," the switch creates a small spark that can ignite flammable fumes. Defendant neither makes an airtight pressure switch for this model nor informs customers that the pressure switch is not airtight. An airtight switch would prevent the spark from contacting, and thus igniting, any fumes near the switch. Some companies do, however, make airtight switches—priced somewhere between $20 and $105 each—that can be used with this model.

On February 3, 1986, Darryl Arnold was the mechanic in charge of the shop at Rich's Auto Repair and Wrecker Service. During the morning, one repair job was draining a mixture of water and gas from the tank of a car in the garage area of the shop. In this area four bay doors could have been open; but three remained closed, with one door half-open during the draining. Testimony conflicted as to the strength of gasoline fumes during this process. Regardless of how noticeable the fumes were, the witnesses agreed that all doors should be open when draining a gasoline tank, and that other safety precautions should be taken.

At some time between 12:30 p.m. and 1 p.m., an explosion occurred in the storage room of Rich's Auto Repair. The storage room was connected to the garage area by an open door. In addition to the air compressor, the storage room also contained a water heater and a gas furnace. The fireball from the explosion swept through the garage area where Darryl Arnold was working. This explosion occurred about the same time the compressor "kicked on" with witnesses disputing which came first—the "kicking on" or the explosion. As a result of this explosion, Darryl suffered third degree burns; his spouse Linda claims indirect damages.

Trial began October 2, 1989. On October 5, 1989, the jury returned a verdict for the plaintiffs, $1,250,000 for Darryl Arnold and $250,000 for Linda Arnold.

### I. Failure to Warn—MAI 25.05

This Court granted transfer on the question whether the circuit court erred in giving a failure to warn instruction, on the facts of the case. Defendant's precise challenge to the giving of MAI 25.05 is that there was insufficient evidence that the failure to warn was a cause of the injuries suffered by plaintiffs. Plaintiffs offer two alternate theories of causation: 1) if a warning had been given, the supplier would not have sold the air compressor to Rich's Auto Repair; and 2) if a warning had been given, Darryl Arnold would have altered his behavior on February 3, 1986.

On the first theory of causation, a rational jury could perhaps (imaginatively) find that the lack of information at the time of purchase was a "but for" cause of the explosion. This theory, however, ignores any reasonable concept of proximate cause. That information affecting the sale of a product could proximately cause injury from its use defies logic. To accept this claim as legally sound would be an unprecedented extension of liability. Plaintiffs cite no cases supporting this theory of causation, and this Court finds none. Instead, the traditional approach to proximate cause in failure to warn cases focuses on the effect of giving a warning on the actual circumstances surrounding the accident. *See* Restatement (Second) of Torts, § 433; *cf. Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 385 (Mo. banc 1986).

In response to the second theory of causation—that a warning would have altered Darryl Arnold's behavior—defendant cites

Darryl's testimony that he had not smelled gas before the explosion and that he had disregarded proper safety precautions while draining the gas tank. Claiming that these admissions by a party-opponent bind plaintiffs, defendant argues that no rational jury could find that an explicit warning would have altered Darryl's behavior. Plaintiffs contend that the absence of a warning creates a rebuttable presumption that such a warning will be heeded, which makes the issue of causation a jury issue. In addition, there were other mechanics in the shop besides Darryl Arnold who might have heeded such a warning. Thus, even if Darryl's behavior would not have been altered by a warning, there remains the question of whether anyone else would have acted, based on the warning, to prevent the explosion of February 3, 1986. Each of these alternate theories subtly twist the causation element of a failure to warn case.

■ Causation in a failure to warn case involves two separate requirements. First, the plaintiffs' injuries must be caused by the product from which the warning is missing. There is sufficient evidence in the present case to raise a legitimate jury question whether the air compressor caused the plaintiffs' injuries.

■ Second, plaintiffs must show that a warning would have altered the behavior of the individuals involved in the accident. Missouri, like several other states, aids plaintiffs in proving this second part of causation by presuming that a warning will be heeded. *See Duke v. Gulf & Western Mfg. Co.*, 660 S.W.2d 404, 419 (Mo.App. 1983). The discussion of this presumption in *Duke* shows that it is not as simple as plaintiffs contend.

■ The presumption that plaintiffs will heed a warning assumes that a reasonable person will act appropriately if given adequate information. Thus, a preliminary inquiry before applying the presumption is whether adequate information is available *absent* a warning. In *Duke*, the court of appeals proceeded to recognize a presumption that a warning would be heeded only after finding that there was a legitimate

jury question whether the plaintiff did not already know the danger. *Duke*, 660 S.W.2d at 418–19. As causation is a required element of the plaintiffs' case, the burden is on plaintiffs to show that lack of knowledge.

In this case, plaintiffs' evidence does not indicate that a warning would have imparted additional information. Instead, the testimony of each of the mechanics present, the shop owner, and the parts supplier (who stopped by the shop on the morning of the explosion) indicated that they all knew that there was a danger of an explosion if gas fumes accumulated in the shop. Thus, plaintiffs failed to present any evidence suggesting that a warning would have imparted additional information. Absent such a showing, the presumption that a warning would be heeded is not applicable. Thus, plaintiffs did not meet their burden of proof on the element of causation and the instruction on failure to warn should not have been submitted to the jury.

## II. Contributory Fault—MAI 32.23

■ The second issue on transfer is whether the circuit court erred in refusing to instruct on contributory fault, MAI 32.-23. This issue turns on whether Darryl Arnold knew the danger posed by the air compressor. Darryl's own testimony provides evidence that, at the very least, he knew that he should not operate several machines, including the air compressor, in the presence of gas fumes. While there was no evidence that he knew the precise part (a spark from the non-airtight pressure switch) of the air compressor that could ignite gas fumes, a rational jury could infer that he knew the danger of an explosion if the air compressor was used in the presence of gas fumes. Other witnesses testified that Darryl engaged in behavior that posed a risk of accumulation of gas fumes and that there was in fact such an accumulation—testimony from which a rational jury could infer that Darryl Arnold knew that there was an accumulation of gas fumes. In short, on the basis of the evidence given at trial, a rational jury could find that Darryl Arnold "voluntarily and

unreasonably exposed himself" to a danger that "directly contributed to cause" his injuries.

The fact that Darryl Arnold exposed himself to a danger, however, is not sufficient to submit an instruction of contributory fault to a jury. It must be the danger submitted in the plaintiff's instructions. This case thus centers on the characterization of the danger submitted to the jury. If the danger is "the chance of an explosion," the evidence clearly supports submitting contributory fault. If the danger is "the lack of an airtight switch," the evidence does not support submitting the case.

Plaintiffs' interpretation of defendant's burden to prove contributory fault requires a mechanical interpretation of prior cases of this Court. This interpretation would require the plaintiff to know in precise terms the defect in the product before contributory fault could be submitted. *Cf. Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780, 787 n. 6 (Mo. banc 1977); *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 365 (Mo.1969) (the user must "discover[ ] the defect").

While the discussion in *Means* is dicta (the defendant never offered a contributory fault instruction), the discussion of contributory fault in *Keener* appears to be squarely on point. *Keener*, however, was the initial case on strict liability in Missouri. Subsequent cases in the court of appeals have refined the rigid and mechanical language of *Keener*.

In *Williams v. Ford Motor Co.*, 454 S.W.2d 611, 619 (Mo.App.1970), the Court of Appeals, Eastern District, discusses contributory fault/assumption of the risk as requiring "the discovery of the defect by the plaintiff" or "her awareness of the danger." In that case, the plaintiff was injured when the car quit steering. Previously, the car had been difficult to steer, but the plaintiff had taken the car in for repairs for this problem, which were completed only hours before the accident. Thus, the court held that the plaintiff was not aware of any danger of the steering failing completely and, as such, a contributory fault instruction was inappropriate.

In *Williams v. Deere & Co.*, 598 S.W.2d 609, 613 (Mo.App.1980), the Court of Appeals, Southern District, held that the plaintiff must know that the product is defective. In that case, the plaintiff was injured when the gear of his tractor shifted from "park," which it had never done previously. Thus, the court held that the evidence was insufficient to show contributory fault as a matter of law.

In *Ensor v. Hodgeson*, 615 S.W.2d 519, 525–26 (Mo.App.1981), the Court of Appeals, Eastern District, stated, "[K]nowledge of the precise engineering explanation of the defect is not necessary. It is sufficient that the user realizes that there is a problem with the product that renders it dangerous to use." Based on this standard, the court upheld the submission of contributory fault when the evidence indicated that the decedent in a wrongful death action knew that his motorcycle was prone to stall.

In *Jarrell v. Fort Worth Steel & Mfg. Co.*, 666 S.W.2d 828, 833 (Mo.App.1984), the Court of Appeals, Eastern District, defined the first element of contributory fault as "that the plaintiff knew the facts which create the danger." Because the plaintiff was the maintenance man who regularly repaired the allegedly defective machine, this element was not at issue. A contributory fault instruction was properly submitted.

In *Uder v. Missouri Farmers Ass'n, Inc.*, 668 S.W.2d 82, 89 (Mo.App.1983) (emphasis in original), the Court of Appeals, Western District, stated that "there must be evidence of awareness or knowledge of the precise danger in the defect asserted by the plaintiff, who thereafter voluntarily assumes the risk of *that* danger." In that case, the decedent was injured when his clothing was caught in a power take-off shield of a fertilizer spreader after the master shield had been removed. There was no evidence the decedent knew that the power take-off shield would continue to turn if he came into contact with it.

In *Wild v. Consolidated Aluminum Corp.*, 752 S.W.2d 335, 339-40 (Mo.App. 1988), the Court of Appeals, Eastern District, cited favorably the requirement imposed in *Uder.* In *Wild,* the plaintiff was injured when the ladder, from which he was working, slipped due to an insufficient coefficient of friction. There was no evidence that plaintiff knew that the ladder's feet did not have a sufficient coefficient of friction. Thus, the court held that there was no error in not giving a contributory fault instruction.

In *Harper v. NAMCO, Inc.*, 765 S.W.2d 634, 638 (Mo.App.1989), the Court of Appeals, Western District, upheld the submission of contributory fault when the plaintiff knew the dangers posed by the product. In that case, the danger was posed by the beaters of a silage wagon, which injured the plaintiff when they came in contact with his clothes. The alleged defect was that these beaters could have been made of safer materials or that the wagon could have had some safety measures. As plaintiff was experienced working with this wagon and knew that the beaters were dangerous, the court upheld the submission of contributory fault instructions.

In *Strang v. Deere & Co.*, 796 S.W.2d 908, 916-17 (Mo.App.1990), the Court of Appeals, Southern District, upheld the submission of a contributory fault instruction citing favorably *Ensor* and *Harper.* In *Strang,* the plaintiff was an experienced operator of the defective machine and similar machines, and knew that the machine lacked the safety feature that allegedly made the product defective.

While differences exist in the cases from the court of appeals, the general tendency is a case-by-case approach based on the plaintiff's experience, a more realistic method than the mechanical language of *Keener.* In short, a plaintiff "knew of the danger as submitted in [plaintiff's] Instruction[s]" if the plaintiff knew that the product posed a significant risk of causing the calamity submitted in the plaintiff's case. As said in *Ensor,* 615 S.W.2d at 525, the plaintiff must know "that there is a problem with the product that renders it dan-

gerous to use," not the "precise engineering explanation of the defect."

The evidence in this case shows similarities between Darryl Arnold and the plaintiffs in cases where contributory fault was submitted. First, Darryl's testimony indicates that, by experience, he was aware of the danger of an accumulation of gas fumes. He knew that any spark could cause accumulated gas fumes to explode. Second, his testimony indicated that, by experience, he knew that electrical products could give off sparks. True, there was testimony that he lacked the precise knowledge that the air compressor gave off sparks and was not explosion-proof. However, there was also evidence from which the jury could infer that Darryl Arnold knew the danger posed by non-explosion-proof electrical products, and had no reason to believe that this air compressor was explosion-proof. Given his experience around electrical products and the testimony of many of the witnesses, a rational jury could infer that Darryl knew the danger of allowing gas fumes to accumulate in the presence of the air compressor. As there was evidence supporting defendant's theory that Darryl Arnold engaged in behavior that he knew could cause an explosion, the trial court should have given the jury instructions on his contributory fault.

The judgment below is reversed, and the case is remanded for a new trial in accordance with this opinion.

ROBERTSON, C.J., COVINGTON, HOLSTEIN, THOMAS, and PRICE, JJ., and SPINDEN, Special Judge, concur.