Gay LEWIS, Plaintiff–Appellant,

v.

**VERMONT AMERICAN CORPORATION, Respondent– Respondent.**

No. 62919.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 11, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 14, 1994.

Application to Transfer Denied March 22, 1994.

Rabbitt, Pitzer & Snodgrass, Richard J. Zalasky, St. Louis, for plaintiff-appellant.

Godfrey, Vandover & Burns, Denis C. Burns, St. Louis, for respondent.

Before SIMON, P.J., and PUDLOWSKI and KAROHL, JJ.

PER CURIAM:

This is an appeal by plaintiff Gay Lewis from judgment after a jury verdict denying his product liability claim against defendant Vermont American Corporation. We affirm.

In his five points relied on, Lewis contends the trial court erred: (1) in admitting evidence of Lewis' failure to wear safety glasses because (a) no evidence was presented to support a preliminary finding that safety glasses would have prevented or lessened the injury, or that Lewis knew they would have prevented or lessened his eye injury and (b) Vermont American did not establish that Lewis' failure to wear safety glasses was the sole cause of his eye injury; (2) in admitting evidence regarding a warning on the packaging label on the package of drill bits purchased by plaintiff which contained the drill bit which fractured during use and caused plaintiff's eye injury because this warning was irrelevant; (3) in submitting contributory fault Missouri Approved Instruction, (MAI) 32.23, because no evidence was presented that Lewis knew there was a problem with *the* drill bit that rendered it dangerous to use; (4) by refusing to allow Lewis to argue that Vermont American did not present any evidence to support a finding that wearing the safety glasses would have prevented or lessened the injury; and (5) by allowing Vermont American to present evidence that it was not allowed to conduct destructive testing of pieces of the drill bit because such evidence was irrelevant. We affirm.

The evidence is reviewed in accord with our obligation to consider all of the record in a light most favorable to the verdict. *Tennis v. General Motors Corp.,* 625 S.W.2d 218, 222 (Mo.App.1981).

This case arises out of an industrial accident which occurred on January 19, 1987, at the Hussman Refrigeration Plant in St. Louis

County. In January, 1987, Gay Lewis (Lewis) was an employee of Griffith Construction Company, (Griffith) for approximately three to four years. On January 19, 1987, Griffith assigned Lewis to work at the Hussman Refrigeration Plant. On his way to the plant, Lewis stopped at Clyde's Lumber to purchase some Vermont American ⅜" drill bits. The drill bits were made of a high speed steel.

Lewis was to use a hand-held power drill in order to make a new meat case. He began to drill holes into a steel C-channel in order to secure it to the meat case. While using one of the new drill bits, it fractured. A co-worker testified he heard Lewis scream and when he ran to Lewis, he observed a shiny piece of steel protruding out through the center of Lewis' eye. Lewis had safety glasses but chose not to wear them. The injury caused Lewis to lose sight in his right eye.

Lewis sued Vermont American and Clyde's Lumber alleging he suffered an eye injury as a result of an unreasonably dangerous and defective drill bit manufactured by Vermont American and sold by Clyde's. Clyde's Lumber was dismissed out of the suit during trial. A jury returned a verdict in favor of Vermont American. Lewis appeals.

In Lewis' first point, he contends that the trial court erred in admitting evidence of Lewis' failure to wear safety glasses because (a) no evidence was presented that such glasses would have prevented or lessened the injury, or that Lewis knew such glasses would have prevented or lessened his eye injury and (b) Vermont American did not establish that Lewis' failure to wear safety glasses was the sole cause of his eye injury. We will address Lewis' first point together with his third point wherein he alleges the trial court erred in submitting MAI 32.23, the contributory fault instruction, because no evidence was presented that Lewis knew there was a problem with the drill bit that rendered it dangerous to use.

The injury Lewis sustained occurred on January 19, 1987. This was before the July 1, 1987 effective date of § 537.765 RSMo Cum.Supp.1992 which adopted pure comparative fault in product liability cases and fault

as an affirmative defense. At the time of plaintiff's injury, contributory fault was not always a product liability issue. *Lippard v. Houdaille Industries, Inc.,* 715 S.W.2d 491, 493 (Mo. banc 1986). However, the giving of a contributory fault instruction based on MAI 32.23 is appropriate in certain cases. *Id.* at 493. Many cases since *Lippard* have addressed this issue, each interpreting when contributory fault is appropriately instructed. In *Arnold v. Ingersoll–Rand Co.,* 834 S.W.2d 192 (Mo. banc 1992), the supreme court clarified the differing interpretations. There it said, "While differences exist in the cases from the court of appeals, the general tendency is a case-by-case approach based on the plaintiff's experience.... In short, a plaintiff 'knew of the danger as submitted in [plaintiff's] Instruction[s]' if the plaintiff knew that the product posed a significant risk of causing the calamity submitted in the plaintiff's case.... [T]he plaintiff must know 'that there is a problem that renders it dangerous to use,' not the 'precise engineering explanation of the defect.'"

Lewis offered verdict director Instruction Number 6, patterned after MAI 25.04, to the jury as follows:

> On plaintiff's claim against defendant Vermont American Corporation, your verdict must be for plaintiff if you believe:
>
> First, defendant sold the drill bit in the course of defendant's business, and
>
> Second, the drill bit was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and
>
> Third, the drill bit was used in a manner reasonably anticipated, and
>
> Fourth, plaintiff was damaged as a direct result of such defective condition as existed when the drill bit was sold, unless you believe plaintiff is not entitled to recover by reason of Instruction Number 8.

Instruction Number 8, patterned after MAI 32.23, was submitted for Vermont American as follows:

> On plaintiff's claim against defendant Vermont American Corporation, your verdict must be for defendant if you believe:

First, when the drill bit was used, plaintiff knew of the danger as submitted in Instruction Number 6 and appreciated the danger of its use, and

Second, plaintiff voluntarily and unreasonably exposed himself to such danger, and

Third, such conduct directly caused or directly contributed to cause any damage plaintiff may have sustained.

Lewis testified that over the course of his lifetime, he had 20 to 50 separate experiences in which drill bits he was using fractured. He knew this before he began using the drill bit which fractured causing the injury to his eye. His father told him to always use protective eye wear when using any type of tool. He had been taught this in trade school. He knew a drill bit could in fact break, and if that happened, a piece might break off and fly someplace. He testified that common sense tells you that a piece of a drill bit might break if there is some side to side pressure put on it. He also testified that if a piece were to break off and fly someplace it could hit him in the eye. On the day of the injury he had been wearing his protective eye wear, but took the glasses off because he was sweating and the glasses were sliding down. He knew he should have been wearing protective eye wear at the time of the injury but did not.

On these facts we find *Arnold v. Ingersoll–Rand Co.* controlling. There, plaintiff was a mechanic in charge of an auto repair shop. During a repair job, he was draining a mixture of water and gas from the tank of a car in the garage. During this procedure he had three of four garage doors closed with the one remaining door only half open. It was during this repair job that an explosion occurred in a connected storage room where an air compressor was contained. The air compressor had an automatic pressure switch which turned on and off when the pressure stored went above or below a certain level. In the act of turning "on," the switch created a small spark that could ignite flammable fumes. The explosion occurred just about the same time the compressor kicked on. The plaintiff was severely burned. At trial, the plaintiff testified he knew all doors should be open when draining a gasoline tank, and that other safety precautions should be taken. *Id.* at 193.

At issue was whether a contributory fault instruction should have been given. The supreme court said exposure to danger is not sufficient in itself to submit an instruction of contributory fault to a jury. *Id.* at 195. "It must be the danger submitted in the plaintiff's instructions.... If the danger [submitted in plaintiff's verdict directing instruction] is 'the chance of an explosion,' the evidence clearly supports submitting contributory fault. If the danger is 'the lack of an airtight switch,' the evidence does not support submitting [such fault]." *Id.* at 195.

The court granted defendant a new trial on the ground a contributory fault instruction should have been given. It found "[plaintiff's] testimony indicated that, by experience, he was aware of the danger of an accumulation of gas fumes. He knew that any spark could cause accumulated gas fumes to explode.... his testimony indicated that, by experience, he knew that electrical products could give off sparks." Even though there was testimony that he lacked the precise knowledge that the air compressor gave off sparks and was not explosion-proof, there was evidence to show that plaintiff knew the danger posed by such products and he had reason to believe that this air compressor was not explosion-proof. *Id.* at 196.

■ The analysis applied in *Arnold* also applies here. Evidence of Lewis' experience and knowledge of the danger that drill bits may fracture coupled with his failure to wear safety glasses supported submission of Instruction Number 8. Lewis knew of the dangers posed in using high speed drill bits. He had been taught by his father, and in school, to always wear safety glasses when using any type of tool. By his experience he knew drill bits could break and that a piece could fly off, possibly hitting him in the eye. He had experienced 20 to 50 occasions where drill bits had broken while he was using them. His common sense told him "a piece of a drill bit might break if there is some side to side pressure on it."

Although Lewis may not have known the precise defect which caused this particular drill bit to break, he knew all drill bits like the one he was using had the possibility of breaking. He had safety glasses with him at the time of the injury and had been wearing them earlier. Lewis knew and appreciated the danger of using drill bits. He chose not to wear safety glasses at the time the injury occurred. Thus, the trial court did not err in admitting evidence of Lewis' failure to wear his safety glasses nor was it error to submit the contributory fault instruction. It was not error in submitting knowledge of the danger in plaintiff's verdict director, dangerous drill bit, and voluntary exposure to that danger. Lewis' first and third points are denied.

In Lewis' second point, he alleges the trial court erred in admitting evidence regarding a warning on the packaging label for the drill bit because this warning was irrelevant. Lewis contends the warning is irrelevant because there was no evidence he read the warning, he testified he did not read it, and this case was submitted on a strict product liability issue only.

During cross examination of Lewis, counsel for Vermont American asked him if the drill bit package had any warnings on it. It did. Lewis then read the following warning for the jury over a relevancy objection:

All drill bits are subject to breakage during use. If this happens, you can lose your balance and control while drilling; fragments of drill bit or work piece can be thrown in all directions. To minimize drill bit breakage and the risk of serious bodily injury, never apply pressure in any direction except directly in line with the drill bit. Never force tool by applying excessive feed pressure during use. Always use a sharp drill bit ... and maintain firm footing and control. Always keep hands away from drilling area. *Always wear protective eye protection.* Before using drill bits read and understand drill machine owner's manual. Failure to heed all safety instructions and warnings can result in bodily injury.

Lewis testified that he did not read the drill bit package warning on this drill bit package. However, his educational training and experience was equivalent to the printed warning. He testified that he knew he should have been wearing protective eye wear at the time of the injury. The language of the warning was a duplication of plaintiff's previous knowledge.

Substantial deference is shown a decision of the trial court as to the admissibility of evidence, which will not be disturbed absent a showing of abuse of discretion. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). The trial court abuses it discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration. *Id.* The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Id.* Further, we will not reverse a judgment because of error which is not prejudicial to an appellant. *Duffy v. Rohan*, 259 S.W.2d 839, 844 (Mo. 1953). By these standards, admission of the warning notice was not prejudicial error.

Lewis relies on *Rogers v. Toro Manufacturing Company*, 522 S.W.2d 632 (Mo.App. 1975). There, the trial court granted a new trial on the grounds that it was erroneous for an instruction manual for a power lawn mower containing safety warnings to be admitted into evidence. A minor was injured when he was struck by a power lawn mower which was being operated by his father and owned by the grandfather. The court stated "Whether in strict liability in tort or in negligence, instructions or warnings, to have any effect, must warn of dangers inherent in the failure to follow the instruction or warning." *Id.* at 638. There was no evidence the father, the user, was aware that an instruction manual existed, with warnings, or of the danger which allegedly caused the injury. For this reason, it was error to admit the instruction manual into evidence. The existence and substance of safety warnings which were not connected to the operator was irrelevant because the issue is proof of knowing violation of safety precautions as a basis for comparative fault. Here, Lewis acknowledged

awareness of the drill bit danger and knowing failure to employ safety precautions.

The court in *Rogers* also addressed the relevance of the instruction manual warnings to the defense of contributory fault for the claims of the parents against the manufacturer. The court noted that undisputed evidence indicated the father was unaware of the instruction manual and therefore the instruction manual warnings were not relevant to a claim he was contributorily fault. Contributory fault was not, therefore, an issue in the case. However, the court stated the effect of admitting the instruction manual was to inject the element of fault of the father into the case and impute that fault to the child. *Id.* at 638. The instruction manual was improperly admitted, it injected a false issue.

*Rogers* is distinguishable from the case at bar because here Lewis' testimony made contributory fault an issue of fact. The warning was not required as foundation evidence of Lewis' knowledge of the danger requiring use of safety glasses. Lewis testified he did not read the warning, but he was aware of the danger mentioned in the warning and the requirements for safety precautions. It was unnecessary for there to be evidence he read the label because he told the jury he knew the message. There was no prejudicial error in allowing Lewis to read the label to the jury. This point is denied.

■ In his fourth point Lewis contends the trial court erred by refusing to allow Lewis to argue in closing argument that Vermont American did not present any evidence that the wearing of the safety glasses would have prevented or lessened the injury.

During pre-trial motions, the trial court determined that the issue of whether Lewis' safety glasses would have prevented the injury which occurred was a fact issue for the jury to decide. Vermont American's expert witness expressed his opinion as to the cause of Lewis' injury by testifying, "Well, he was not wearing safety glasses." Counsel for Lewis objected. The trial court sustained plaintiff's objection on the ground the answer invaded the province of the jury and that it was an ultimate finding of fact for the jury. On plaintiff's request the court instructed the jury to disregard the question and the answer.

Plaintiff's counsel attempted to argue, "[Counsel for Vermont American] is saying ... [the wearing of safety glasses] would have prevented [the injury]. Ask yourself if you heard one witness, one expert say it would have made a difference or it wouldn't." Counsel for Vermont American objected on the ground the judge had previously determined that this issue was for the jury to determine. The trial court sustained this objection. We do not understand why the evidence objection ruling foreclosed argument to assist the jury in deciding the fact issue regarding proof or absence of proof on a contested issue. However, plaintiff's acknowledgement of the need for safety glasses is sufficient to support an inference that they may have prevented or lessened the injury. There was a witness who said wearing safety glasses would have made a difference, the plaintiff.

■ The regulation of closing argument rests largely within the sound discretion of the trial court and its ruling will not be disturbed on appeal, absent a clear showing of abuse of discretion. *St. Louis Southwest Rwy. Co. v. Federal Compress & Warehouse Co.*, 803 S.W.2d 40, 45 (Mo.App.1991). The trial court has broad discretion in the area of closing argument, not lightly to be disturbed on appeal. *Cornette v. City of North Kansas City*, 659 S.W.2d 245, 249 (Mo.App.1983).

■ The trial court's ruling prevented Lewis from commenting that Vermont American did not prove safety glasses would have prevented or lessened the injury incurred. It did not withdraw the issue from the jury. Plaintiff's verdict director required a finding that product defect directly caused the injury. Plaintiff's admitted knowledge of danger and requirement for use of safety glasses was sufficient to support the verdict and a ruling limiting closing argument was not prejudicial error. If there was no evidence to support a finding the failure to wear safety glasses caused or contributed the injury, the ruling may have been prejudicial error. However, this was not the case, this point is denied.

Finally, in Lewis' fifth point, he alleges the trial court erred by allowing Vermont American to present evidence that its expert was not allowed to conduct destructive testing of the drill bit, which would entail cutting the drill bit, then polishing and etching it in order to examine it under a microscope, because such evidence was irrelevant.

Before trial, Vermont American sought an order to permit inspection of the drill bit. The motion was sustained with restrictions. The court allowed only those tests which were performed by Lewis' expert. On the first day of trial, Vermont American wanted to cross examine Lewis' expert witness about the fact he did not do destructive testing. It also requested that it be allowed to explain to the jury that its expert was prohibited from doing destructive testing because of the limitation imposed by the court. Its theory was a test requiring destruction would have proved the bit was not defective, hence, the fracture must have been caused by misuse. The trial court ruled that it would be allowed to show that it was precluded from doing the testing because of the order limiting the scope of its testing to the testing done by Lewis' expert.

Lewis argued in pre-trial documents and in closing argument that the reason its expert did not do destructive testing was because it wanted the jury to see the pieces of the drill bit in original condition.

During direct examination, plaintiff's expert testified that some of his tests were not complete representations of his findings because he did not have a flat surface of the drill bit to test. A flat surface of the drill bit could have been obtained by doing destructive testing. On cross examination, this expert testified that the most desirable way to test the drill bit would be to mount the drill bit on plastic and then do testing. This would also require destructive testing. Vermont American's expert said destructive testing was the only way to definitively examine the drill bit.

The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Oldaker, supra,* 817 S.W.2d at 250. Substantial deference is shown a decision of the trial court as to the admissibility of evidence. *Id.* Additionally, we will not reverse on the basis of admission or exclusion of evidence unless there is substantial or glaring injustice. *State ex rel. Hwy & Tr. Com'n v. Pracht,* 801 S.W.2d 90, 93 (Mo.App.1990).

We find no error in allowing Vermont American's expert to testify that destructive testing would provide the most definitive examination of the drill bit and that by court order it was prohibited from doing such testing. Lewis' expert similarly testified and counsel for Lewis was free to explain that the reason destructive testing was not done was because it wanted the jurors to view the drill bit pieces in original form. We find no substantial or glaring injustice in the admission of such testimony. This point is denied.

Judgment affirmed.