Tony MORTON, et al., Plaintiffs,

v.

HOMELITE, INC. d/b/a Homelite Division of Textron, Inc., et al., Defendants.

No. 97–0162–CV–W–3.

United States District Court,
W.D. Missouri,
Western Division.

Oct. 28, 1998.

Daniel F. Church, Byron A. Bowles, McAnany, Van Cleave & Phillips, Kansas City, KS, for plaintiffs.

William R. Bay, Thompson Coburn, St. Louis, MO, Gary Mayes, Bettina L. Joist, for defendant.

## ORDER

SMITH, District Judge.

Currently pending before the Court is Defendant Textron Inc.'s Motion in Limine regarding Warnings (Doc. 85) and Defendant Textron's Motion in Limine to Exclude the Testimony of Plaintiffs' Design Expert, James D. Anderson (Doc. 68).

## I. MOTION IN LIMINE REGARDING WARNINGS

Defendant Textron alleges that plaintiffs should not be allowed to present any testimony or evidence of an alleged failure to warn because there is no evidence that the lack of a warning caused the accident and also because plaintiff had sufficient knowledge of the product such that a warning would not have altered his behavior.

On a failure to warn claim, plaintiff must establish:

1) the defendant sold the product in the course of his or her business; 2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; 3) the defendant did not give an adequate warning of the danger; 4) the product was used in a manner reasonably anticipated; and 5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

*Jaurequi v. John Deere Co.*, 971 F.Supp. 416, 427 (E.D.Mo.1997), *citing, Campbell v. American Crane Corp.*, 60 F.3d 1329, 1331 (8th Cir.1995). The fifth requirement, causation has two prongs: " ...1) the product for which there was no warning must have caused plaintiff's injuries; and 2) the plaintiff must show that a warning would have altered the behavior of those involved in the accident." *Jaurequi* at 427, *citing, Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 14 (Mo. banc 1994). *See also, Leonard v. Bunton Co.*, 925 F.Supp. 637, 644 (E.D.Mo.1996).

Missouri law allows plaintiffs a presumption that a warning will be heeded. *Arnold v. Ingersoll–Rand Co.*, 834 S.W.2d 192 (Mo. banc 1992). This presumption assumes that "a reasonable person will act appropriately if given adequate information." *Id.* at 194. However, before the presumption is applied, it must be determined whether adequate information was available to plaintiff. *Id.* If plaintiff is unable to demonstrate that a warning would have communicated additional information, the presumption does not come into play. *Id.* The burden of proof regarding the adequacy of knowledge rests with plaintiff. *Id.*

In the instant case, defendant Textron alleges that the presumption is not triggered because plaintiff has not demonstrated that he was provided with inadequate information or that a warning would have imparted additional information to him. Defendant relies on Mr. Morton's deposition testimony. Mr. Morton testified as follows:

Q. Okay. Now, you didn't need Mr. Bartel to tell you to screw on the cap of this chop saw, did you?

A. No.

Q. You knew that long before you ever picked up a chop saw?

A. Yes.

Q. If you have a device that has a cap on it, you got to screw the cap on it?

A. Yes.

Q. You knew that was very important to keep the cap on it?

A. Yes.

Q. Why is it important to keep the cap on it?

A. You don't have an accident like I had.

(Morton Depo., pp. 280–281).

Mr. Morton further testified:

Q. You didn't need a sign in this particular case telling you to check the gas cap on this chop saw did you?

A. I would like to have been reminded.

Q. But you didn't need that. You knew all along that you need to have that gas cap on there tight?

A. Yes.

(Morton Depo. pp. 286–87).

Plaintiffs argue that the presumption applies because even though Tony Morton was generally aware of the importance of tightening gas caps on saws, he did not know that you needed to check for tightness *every* time before you used the saw when the cap had not previously been unscrewed and when by observation the cap appeared to be tight.

Plaintiffs claim that at the very least there is a jury question regarding whether Tony Morton already knew of the danger which the warning would have addressed. *Duke v. Gulf & Western Mfg. Co.*, 660 S.W.2d 404, 418 (Mo.App.1983)(adequacy of knowledge is question for jury). Although generally the adequacy of plaintiff's knowledge is a jury question, where a warning would not have conveyed any additional information it is appropriate for the Court to enter judgment. In *Campbell v. American Crane Corp.*, 60 F.3d 1329 (8th Cir.1995), the Eighth Circuit found that the trial court erred in failing to

grant judgment as a matter of law on a failure to warn claim where the plaintiff was an experienced crane operator with many years experience who could have been expected to know of the open and obvious danger of falling from the boom of the crane.

In this case, the Court does not feel that plaintiffs have met their burden of demonstrating that a warning would have imparted additional information. Mr. Morton testified that he knew that it was important to have a tight gas cap on the saw in order to prevent injuries like those he suffered. The general knowledge that a chop saw requires a tight gas cap encompasses the more specific knowledge that a gas cap should be checked every time before the saw is used. This is especially true in the instant case where the saw was delivered to Mr. Morton by another individual and where Mr. Morton had not used the saw in several months. Therefore, because plaintiffs have failed to demonstrate that a warning would have communicated any additional information, the presumption does not apply. Without this presumption, the Court finds that plaintiffs have failed to prove causation on their failure to warn claim. Accordingly, defendant's motion in limine will be granted.

## II. MOTION IN LIMINE RE: JAMES ANDERSON

Defendant Textron has filed a motion in limine to exclude the testimony of plaintiff's liability expert, James Anderson. Defendant claims that Mr. Anderson is not qualified under Fed.R.Evid. 702 to testify or offer expert opinions regarding design defect theories because he lacks the requisite qualifications, background and experience regarding the Homelite Model XL–98A multi-purpose saw. Defendants also object to Mr. Anderson because his defect theories are not based upon generally accepted methodology or scientific principles.

Fed.R.Evid. 702 controls the admissibility of expert testimony. The Rule states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an

expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The Supreme Court noted in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), that it is the duty of the trial court to act as a gatekeeper and to screen such opinions for relevancy and reliability. " 'This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' " *Doblar v. Unverferth Mfg. Co.*, 981 F.Supp. 1284, 1286 (D.S.D.1997), *quoting, Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786. When ruling on the reliability of expert testimony, *Daubert* suggests that the Court consider four factors: 1) whether the theory has been tested; 2) whether the theory has been subject to peer review; 3) what the known rate of error is; and 4) whether the theory is generally accepted. *Daubert*, 509 U.S. at 593–594, 113 S.Ct. 2786. However, before examining Mr. Anderson's theories regarding the Homelite saw, it is necessary to review Mr. Anderson's qualifications.

## A. Mr. Anderson's Qualifications

James Anderson holds a bachelor of science degree in mechanical engineering and a master of science degree in aerospace technology. Mr. Anderson is a registered professional engineer in Florida, Alabama, Georgia and Mississippi. Mr. Anderson is accredited by the National Academy of Forensic Engineers and Board Certified in Forensic Engineering by the Council of Engineering Speciality Boards. Mr. Anderson's primary experience with fuel comes from his employment in the aerospace industry. While working as a Launch Operations Engineer at Cape Canaveral, Mr. Anderson was responsible for the delivery and storage of fuel at the ground facility, maintenance of transport lines to the launch, fueling the launch vehicle, and post flight data analysis of the fuel consumption and efficiency. He was specifically responsible for fuel containment, cap maintenance, sealing and leak avoidance. Mr. Anderson also obtained relevant experience while working at the Goddard Space Flight Center and for Radiation Incorporated, Environmental Test Facility. In both of these positions he was responsible for leak detection and leak containment for caps, tanks and other sealing mechanisms. Mr. Anderson also developed, designed and engineered mechanisms to avoid, prevent and correct fluid leakage. (Affidavit of James Anderson).

Defendant points out that Mr. Anderson has never designed nor been involved in the manufacture of any sort of consumer or gasoline powered tools or equipment and that his only experience with metallurgy, plastics, machine and thread design is what he learned in college. (Anderson Depo. pp. 19; 23–24). Defendant also points out that the majority of Mr. Anderson's work as an expert is in the area of accident reconstruction, not products liability. Fifty to fifty-five percent of Mr. Anderson's work involves accident reconstruction/traffic cases. Approximately thirty-five percent of Mr. Anderson's work is related to slip and fall accidents. The remaining ten percent of his work involves products liability. (Anderson Dep. p. 215). Mr. Anderson testified that he has served as a consultant in approximately six other cases involving gasoline powered tools. (Anderson Depo. pp. 32–33).

Fed.R.Evid. 702 states that an expert witness who is qualified by "knowledge, skill, experience, training or education" may testify. The Court finds that even though Mr. Anderson has not had extensive experience with gasoline powered products, his background as a mechanical engineer and his experience with fuel containment and leak avoidance in the aerospace industry qualifies him to serve as an expert in this case. The Court will now analyze the opinions proffered by Mr. Anderson.

## B. Mr. Anderson's Opinions

It is Mr. Anderson's opinion that the Homelite XL–98A multi-purpose saw was defective due to: 1) the location of the fuel cap; 2) inadvertent hand contact with the fuel cap; 3) tolerance or looseness of the fuel cap thread and use of a single thread on gas cap;

and 4) use of inconsistent materials used for fuel cap and fuel tank.

### 1. Location of the Gas Cap

It is Mr. Anderson's opinion that the location of the gas cap underneath the handle of the saw makes it difficult for the operator to adequately tighten the gas cap and thus the cap is subject to leakage. Mr. Anderson opines that relocating the gas cap to the rear of the saw would make it easier for the operator to tighten the gas cap.

### 2. Inadvertent Contact

Mr. Anderson also believes that the location of the fuel cap underneath the handle of the saw allows for inadvertent contact between the fuel cap and the operator's hand. It is Mr. Anderson's opinion that if the seal of the fuel cap is not adequate, any readjusting of the operator's hand might potentially loosen the gas cap allowing fuel to leak out. (Anderson's Rule 26 Compliance Report).

### 3. Fuel Cap Threads

Mr. Anderson believes that the loose thread tolerances allow more fuel to escape once the seal is broken and allows lateral movement of the cap due to the vibration of the saw during operation. (Anderson Depo. pp. 113–116; 161–162). It is also Mr. Anderson's opinion that use of a single thread allows the fuel cap to come completely off when it is turned only 360 degrees. (Anderson Depo. pp. 166–67).

### 4. Use of Inconsistent Materials

It is Mr. Anderson's opinion that because the fuel cap was plastic and the fuel tank magnesium, thread deformation of the single thread of the fuel cap occurs each time the cap is tightened and does not allow for repeatable tightness of the fuel cap over time. (Anderson Depo. p. 174–176).

### C. Analysis

Mr. Anderson's first opinion is that the location of the cap under the handle made it more difficult for the operator to tighten the cap. However, Mr. Anderson admits that it is possible to adequately tighten the cap

when it is located in this position. (Anderson Depo. p. 118). Mr. Anderson testified that he conducted torque tests on the gas cap. With his hand over the bar he was able to achieve torque forces of 10–12 inch pounds. At this level, no fuel leaked from the saw. When he tightened the gas cap from the front of the saw, Mr. Anderson was able to achieve torque forces of 16 inch pounds. (Anderson Depo. pp. 92–97). Thus, Mr. Anderson's tests actually show that the location of the gas cap under the handle of the saw was not defective because in that position he was able to achieve a level of torque which prevented leakage. Mr. Anderson did conduct some tests which demonstrate that the more the gas cap was loosened, the larger the quantity of fuel would leak from of the saw. But that if the cap were tightened down sufficiently, no fuel would leak from the saw.

Mr. Anderson proffers the theory that the location of the gas cap in the back of the saw would have allowed the operator easier access, however, he has not presented the court with any evidence that even if the cap had been located in the back of the saw, the fuel would not have leaked out if the cap was loose.

Mr. Anderson's other opinions relating to the fuel cap threads and the incompatibility of materials both assume that the fuel cap was loose. Mr. Anderson admits that the tolerance of the fuel cap threads is irrelevant if the gasket seal is tight. (Anderson Depo. p. 162). Mr. Anderson also admitted that the incompatibility of the materials is only a factor if the gasket seal was broken. (Anderson Depo. p. 180). In addition, Mr. Anderson testified that he did not see any signs of burring or deformation on the edges of the fuel cap used in the Homelite saw which was involved in the accident. (Anderson Depo. pp. 176–177). Thus, if the gas cap was tight, these defect theories become irrelevant.

Mr. Anderson's final theory is that the location of the fuel cap under the handle bar made it possible for the operator's hand to inadvertently contact the cap and loosen the cap. However, there is no evidence in the record that such inadvertent contact occurred. Mr. Anderson testified that there

was nothing in Mr. Morton's deposition testimony which indicated that his hands inadvertently contacted the gas cap. (Anderson Depo. p. 130). Mr. Anderson admitted in his deposition that he did not perform any experiments or tests to determine how much the index finger of the left hand would move or displace the cap when it rotates. (Anderson Depo. pp. 131–32). Mr. Anderson also admitted that he had never observed anyone use a XL–98 multi-purpose saw and have their left hand dislodge a fuel cap. He has not read any literature on this phenomenon and has not seen any test data reporting on this theory. (Anderson Depo. p. 132–33). Mr. Anderson's only support for his opinion is his own personal observation of persons using power equipment other than a Homelite XL–98 saw. (Anderson Depo. p. 133).

After examining Mr. Anderson's opinions, the Court does not feel that Mr. Anderson's theories are either relevant or reliable. The Court does not believe that such information would assist the jury in understanding the evidence or in determining facts at issue. Therefore, the Court will grant defendant's motion in limine to exclude the testimony of James D. Anderson.

The remaining motions in limine will be taken under advisement pending receipt of report of the mediator.

IT IS SO ORDERED.