Bobby TOOMBS, Appellant,

v.

Dr. Carl BELL; Norvell Dixon, Nurse, Cummins Unit, Arkansas Department of Corrections; Woodson Walker, Individually and in his official capacity as Chairman of the Board of the Arkansas Department of Corrections; Morris D. Raher; Charles Mazander; Don Smith; Bobby Roberts; Nancy Talburt; Floyd Johnson, Individually and in their official capacities as members of the Arkansas Department of Corrections; A.L. Lockhart, Individually and in his official capacity as Director of the Arkansas Department of Corrections; Willis Sargeant, Individually and in his official capacity as Warden of the Cummins Unit of the Arkansas Department of Corrections; Health Management Associates, Inc., Individually and in its official capacity as health care providers for the Arkansas Department of Corrections, Appellees.

No. 89–1862.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1990.

Decided Sept. 24, 1990.

Lisa Kelly, Pine Bluff, Ark., for appellant.

Terry F. Wynne, Pine Bluff, Ark., for appellee Bell.

David Eberhard, Little Rock, Ark., for appellee Bd. of Correction.

Alan R. Humphries, Pine Bluff, Ark., for appellee Norvell Dixon and Health Management Ass'n.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and DUMBAULD,* Senior District Judge.

WOLLMAN, Circuit Judge.

Bobby Toombs, an inmate at the Cummins Unit of the Arkansas Department of Corrections (Department) appeals from the district court's judgment in favor of all defendants in his claims against them for negligence and deliberate indifference to his medical needs. We affirm in part and reverse and remand in part.

## I.

Since the early 1980s, the Department has contracted with Health Management Associates, Inc. (HMA), a private health care provider, to provide all health care for Department inmates. The contract provides for daily on-site physician coverage seven days a week, eight hours per day, and emergency physician coverage seven days per week, twenty-four hours per day. The contract requires that "the level of care rendered to the residents of the Arkansas Department of Corrections shall be of a quality similar to that afforded the general populace of the State of Arkansas, and will reflect the established professional standards for the practice of medical sciences."

Toombs filed a pro se complaint on March 4, 1985, asserting a claim under 42 U.S.C. § 1983 for the lack of medical treatment he received while incarcerated in the Cummins Unit. The district court dismissed the complaint. On appeal, we appointed counsel to represent Toombs. We reversed and remanded to the district court with instructions to permit Toombs to amend his pleadings and develop his claim. *Toombs v. Bell*, 798 F.2d 297 (8th Cir.1986).

On remand, Toombs amended his complaint to claim deliberate indifference to serious medical needs on the part of the director of the Department, members of the Arkansas Board of Corrections (Board), the warden of the Cummins Unit, HMA, and two agents of HMA, alleging that these parties were aware of the deliberate indifference to the serious medical needs of inmates regularly exhibited by HMA and took no corrective action. The complaint also alleged medical malpractice on the part of HMA and two of its agents, and breach of a third-party beneficiary contract between the Department and HMA.

---

* The HONORABLE EDWARD DUMBAULD, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

## II.

Toombs testified that in late August of 1984, he began to experience cramping and pain in his right upper rib cage. Each weekday for a period of nearly three weeks he presented himself to Norvell Dixon, a medical technician employed by HMA to screen inmate complaints at "sick call" to determine whether individual inmates required a doctor's care. Toombs testified that Dixon neither examined him nor referred him to a physician and used vulgar language in rejecting his requests for help (telling Toombs "that I just had gas and to move my ass"). His pleas for medical help having thus been ignored by Dixon, Toombs filed a grievance with the warden of the Cummins Unit requesting medical care, but received no response. On September 10, 1984, Toombs also wrote to Dr. Carl Bell, a private physician with whom HMA had contracted to provide non-emergency medical services at the Cummins Unit. Toombs testified that Dr. Bell visited him, but did not treat him or examine him to determine his condition.

On September 14, 1984, a Friday, Toombs passed out in his cell after two days of vomiting and fever. After another inmate discovered him, Toombs was taken by stretcher to the Cummins Unit infirmary, where he waited the week-end without a visit from a physician. Dr. Bell testified that on September 17, 1984, he conducted a complete abdominal examination of Toombs, referred Toombs for laboratory work, placed him on a clear liquid diet for 24 hours, and put him on sick call to be seen the following morning. Dr. Bell further testified that when he re-examined Toombs the next morning he directed that Toombs be transferred to the diagnostic unit for workup. Toombs was then transferred to a local private hospital. After his condition had stabilized, Toombs underwent surgery for the removal of his gallbladder.

At the close of Toombs' case, the district court directed a verdict in favor of the defendants on the section 1983 claim. Likewise, the district court declined to instruct the jury on Toombs' breach of contract claim or on punitive damages. The court instructed the jury only on the negligence claim against Dixon and Dr. Bell. The jury's verdict found in favor of Dr. Bell and awarded Toombs $7,500 damages against Dixon. The district court promptly granted judgment notwithstanding the verdict on the damage award.

## III.

### A.

Toombs first challenges the district court's directed verdict in favor of Warden Lockhart and Arkansas Board of Corrections officials. We review a directed verdict under the same standard the district court applies: we assume that all of the evidence in support of the party opposing the motion is true and give that party the benefit of all inferences that could reasonably be drawn from the evidence, taking the issue from the jury only if all the evidence favors the movant and is "susceptible of no reasonable inferences sustaining position of the nonmoving party." *Dale v. Janklow*, 828 F.2d 481, 484 (8th Cir.1987), *cert. denied*, 485 U.S. 1014, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988) (quoting *Bell v. Gas Serv. Co.*, 778 F.2d 512, 514 (8th Cir.1985)); *Grogg v. Missouri Pacific R.R. Co.*, 841 F.2d 210, 211–12 (8th Cir.1988).

Toombs contends that the district court based its ruling in favor of these defendants on the ground that the defendants had absolved themselves from liability under 42 U.S.C. § 1983 by contracting the provision of inmate health care to a private organization. We agree with Toombs that such a holding would be contrary to the Supreme Court's ruling in *West v. Atkins*, 487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (footnote omitted), in which the Court said:

Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West; the State delegated

that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.

*See also Crooks v. Nix,* 872 F.2d 800, 803–04 (8th Cir.1989). The Department officials, however, contend that the basis of the district court's directed verdict was the lack of evidence of any Board policy of deliberate indifference to Toombs' medical needs. We agree, for although the district court discussed the effect of the contract between the Board and the HMA, the court went on to say: "Of course, I don't think there is any deliberate indifference shown anywhere. I'm not going to submit deliberate indifference." In so ruling, the court effectively directed the verdict on the section 1983 claims in favor of both the Department and the HMA and its employees. Without recounting the evidence, our review of the record satisfies us that the district court did not err in so ruling.

### B.

■ Toombs contends that the district court erred by excluding from evidence a report that Toombs claims would have shown HMA's widespread breaches of its contract with the Department to provide medical services to the state's inmate population. The report was prepared by the Institute for Law and Policy Planning as a part of the audit conducted by the Institute at the Board's request to evaluate HMA's compliance with its contract obligations. The district court refused to admit the report, describing it as "a generic report covering all the operations of HMO [sic]." As HMA and the Department point out, the report concerned the operations of the Department in general and did not pertain to operations at the Cummins Unit particularly, nor did it purport to study HMA's operations in 1984, the year of Toombs' medical problems. Defendants argue that the report was therefore not relevant.

The report contained some twelve findings regarding HMA's performance under the contract. These findings related, among other things, to HMA's failure to provide the required number of doctor hours, HMA's utilization of inmates in prohibited jobs, and HMA's failure to keep adequate records. Although these findings, as well as some of those not recounted here, reflect a failure of performance by HMA, they do not tend to show a policy of deliberate indifference to inmates' serious medical needs on the part of HMA, the Board, or the Department. Moreover, none of the findings supports such a showing as to Toombs himself. Accordingly, we conclude that the district court did not abuse its discretion in excluding the report in the circumstances of this case.

### C.

The district court did not instruct the jury on Toombs' third party beneficiary theory. We agree with defendants that Toombs failed to make out a submissible case that a breach occurred that proximately caused his injuries. Thus, the district court did not err in refusing to submit this theory of recovery to the jury.

### D.

■ Toombs contends that the district court erred in granting judgment notwithstanding the verdict after the jury rendered a verdict against defendant Dixon. We agree. The standard that must be met before a jury's verdict may be set aside is a rigorous one. In ruling on a motion for a judgment notwithstanding the verdict, the district court must (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence. *Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 136 (8th Cir.1985). *See also Morgan v. Arkansas Gazette,* 897 F.2d 945, 948 (8th Cir.1990); *Dace v. ACF Industries,* 722 F.2d 374, 376 (8th Cir.1983).

We conclude that the evidence was sufficient to support the jury's verdict against Dixon. Toombs testified that Dixon had failed to examine him notwithstanding his complaints of pain, swelling, and fever. It was for the jury to judge the credibility of the witnesses. In making its credibility determinations, the jury had before it a 1982 report from Dixon's then supervisor characterizing Dixon's performance as a laboratory technician as "marginal at best" and describing Dixon as "apathetic, lithsome [sic] and lazy." The report went on to recount Dixon's other shortcomings and concluded that he be dismissed immediately. Dixon himself acknowledged at trial that on occasion he cursed inmates when they cursed him. Given this evidence, it is understandable that the jury found Dixon's testimony lacking in verisimilitude.

## CONCLUSION

The judgment dismissing the complaint as to all defendants other than Dixon is affirmed. The judgment notwithstanding the verdict on Toombs' negligence claim against Dixon is reversed, and the case is remanded to the district court with directions to reinstate the $7,500 verdict on that claim.