# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1900
_____

| | |
|---|---|
| Douglas R. Tenbarge, Lilly Tenbarge, | * |
| | * |
| Appellants, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Eastern District of Missouri. |
| Ames Taping Tool Systems, Inc., | * |
| | * |
| Appellee. | * |

_____

Submitted:  November 18, 1998

Filed:  July 7, 1999
_____

Before McMILLIAN, WOLLMAN,[1] and HANSEN, Circuit Judges.
_____

WOLLMAN, Chief Judge.

Douglas R. Tenbarge appeals from the district court's order granting judgment as a matter of law in favor of Ames Taping Tool Systems, Inc. (Ames) on Tenbarge's claim of failure to warn and from the judgment entered on a jury verdict against him on his remaining claims.  We reverse and remand for a new trial.

_____

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

**I.**

From 1983 to 1993, Tenbarge worked as a drywall installer. His primary duty was to apply drywall compound and tape along the seams of drywall panels with an Ames Auto Taper, known as a Bazooka. The Bazooka is a tube fifty-six inches in length and two and one-fourth inches in diameter used to apply joint compound and tape simultaneously to drywall seams in ceilings and walls. It weighs seven pounds when empty and twenty pounds when filled to capacity with joint compound and a 500-foot roll of tape. The Bazooka is operated by holding it with both hands and applying pressure against the seam as the joint compound and tape are being fed out of the tube. As we recently noted in a case alleging claims of injuries somewhat similar to those alleged by Tenbarge, the Bazooka requires repetitive wrist motions and the exertion of considerable pressure to apply the tape and compound. Lacking handholds, "the Bazooka is awkward to support and maneuver, particularly while doing overhead work." Bone v. Ames Taping Tool Sys., Inc., No. 98-2324, slip op. at 2 (8th Cir. June 8, 1999).

In 1991, after experiencing numbness in his hands and fingers, Tenbarge consulted a physician and was diagnosed with carpal tunnel syndrome (CTS). In December 1992 and January 1993, Tenbarge underwent surgery on both wrists. He returned to work in April 1993, only to sustain an elbow injury. He underwent a third surgery late in 1993.

Tenbarge filed suit in Missouri state court in 1994 against Ames, the manufacturer and lessor of the Bazooka. He alleged cumulative injuries as a result of using the Bazooka. In addition, his wife alleged loss of consortium. Ames removed the case to federal court and was subsequently granted summary judgment. We reversed the district court's entry of summary judgment, finding that Tenbarge had alleged sufficient facts to warrant jury consideration of the causation issue. See Tenbarge v. Ames Taping Tool Sys., Inc., 128 F.3d 656, 658 (8th Cir. 1997).

On remand, the district court granted judgment as a matter of law in favor of Ames on Tenbarge's claims of liability based upon Ames's failure to warn of the danger of injury resulting from the use of the Bazooka. The jury found in favor of Ames on Tenbarge's claims based upon negligence, strict liability for defective condition, and breach of both express and implied warranties.

## II.

During his deposition, Dr. Peter Nathan, one of Ames's witnesses, testified that "I don't know what has caused [Tenbarge's] carpal tunnel syndrome. I've listed -- or given to you here what I would consider to be risks." See Joint. Appx. at 000301. There then followed this exchange between Tenbarge's counsel and Dr. Nathan:

> Q. Can you say, Doctor, at this time within a reasonable degree of medical certainty what systemic disease or systemic problem, if any, Doug Tenbarge has which is contributing to this multiple entrapment phenomenon or abnormality?
>
> A. I cannot rule out alcohol because he does consume some -- consume some alcohol and I don't know at what point his threshold is met. I cannot rule out the rheumatoid because he does have a diagnosis of rheumatoid arthritis. . . .
>
> Q. You're unable to rule out alcohol or rheumatoid arthritis, but are you, in any fashion, able to rule them in within a reasonable degree of medical certainty?
>
> A. I can only tell you that they have to be considered as risks.
>
> . . . .
>
> A. I'm not saying that the major cause or minor cause -- I can't even tell you the major risk but they have -- they are certainly risks that

a physician in a workup must consider . . . in his differential diagnosis of risks.

Joint Appx. at 000304.

At trial, Dr. Nathan's testimony contrasted sharply with the foregoing deposition testimony.  Dr. Nathan stated that not only was rheumatoid arthritis a risk factor, but that it was the major cause of Tenbarge's CTS.  The district court overruled Tenbarge's objections to this testimony, stating that any variation in Dr. Nathan's testimony would constitute excellent grounds for impeachment on cross examination.  The district court then denied Tenbarge's request for leave to depose Dr. Nathan over the lunch hour.

Tenbarge contends that he was prejudiced by this change in Dr. Nathan's testimony and that the district court abused its discretion in denying him leave to further depose Dr. Nathan.  In response, Ames contends that because Dr. Nathan repeatedly characterized rheumatoid arthritis as a risk factor during his deposition, Tenbarge was on notice that a significant portion of Dr. Nathan's trial testimony would focus on rheumatoid arthritis.

Federal Rule of Civil Procedure 26(e) requires parties to supplement the testimony of their expert witnesses to inform the opposing party of any changes or alterations.  If a party fails to supplement expert testimony, the district court may order appropriate sanctions as provided for in Rule 37(c).  Sanctions may include exclusion of the testimony, a continuance to allow depositions to be taken, or the grant of a new trial.  The duty to supplement expert testimony extends to any changes or additions to the information provided in a deposition.  See 8 C. Wright, A. Miller, and R. Marcus, Federal Practice and Procedure § 2049.1, at 605 (1994).

"Discovery of expert opinion must not be allowed to degenerate into a game of evasion."  Voegeli v. Lewis, 568 F.2d 89, 97 (8th Cir. 1977).  "[T]he purpose of our

modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993) (quoting Greyhound Lines, Inc. v. Miller, 402 F.2d 134, 143 (8th Cir. 1968)).

Ames clearly had a duty to inform Tenbarge of any changes or additions in Dr. Nathan's testimony. Its failure to do so denied Tenbarge the opportunity to develop his cross-examination of Dr. Nathan or to present additional expert witnesses to counter Dr. Nathan's newly arrived at conclusions. Because the cause of Tenbarge's CTS was a key issue at trial, see Bone, slip op. at 2-3, Tenbarge's lack of opportunity to challenge Dr. Nathan's testimony on causation resulted in a fundamental unfairness that requires us to order that he be granted a new trial. See Porchia v. Design Equip. Co., 113 F.3d 877, 882 (8th Cir. 1997).

## III.

The district court granted Ames's motion for judgment as a matter of law on Tenbarge's strict liability and negligent failure to warn claims, ruling that Tenbarge failed to present evidence of the Bazooka's defect, what danger should have been warned against, what an adequate warning should say, and that he would have heeded a warning.

When reviewing a grant of a motion for judgment as a matter of law, we assume as true the evidence proffered by the nonmoving party, giving the non-moving party the benefit of all inferences that could be reasonably drawn from the evidence. See Toombs v. Bell, 915 F.2d 345, 347 (8th Cir. 1990). We will take the issue from the jury only if all the evidence supports the movant and the evidence is not susceptible of any reasonable inferences that would support the position of the nonmoving party. See id. Because this is a diversity case, we review state law questions de novo. See Sperry v. Bauermeister, Inc., 4 F.3d 596, 597 (8th Cir. 1993).

## A.

In Missouri, there are five elements of a strict liability failure to warn claim: (1) the defendant sold the product in the course of its business; (2) when used as reasonably anticipated and without knowledge of its characteristics, the product was unreasonably dangerous at the time of sale; (3) the defendant did not give an adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning. See Tune v. Synergy Gas Corp., 883 S.W.2d 10, 13 (Mo. 1994) (en banc).

It is uncontested that Ames provided the Bazooka in the ordinary course of business and that Tenbarge used the Bazooka in the manner for which it was intended. Tenbarge introduced evidence sufficient to support an inference that the Bazooka was unreasonably dangerous by presenting testimony concerning the risk of repetitive trauma injury. The parties agree that Tenbarge was never given any warnings about the use of the Bazooka during his job training. Bazookas shipped by Ames to Tenbarge's employer contained no accompanying literature instructing on their proper use nor any warnings regarding the advisability of limiting their use. Ames admitted that from 1984 to 1995, it did not issue any warnings concerning the possibility of repetitive trauma or repetitive stress injuries as a result of using the Bazooka.

The central issue is whether Tenbarge made an adequate showing of causation. To make a submissible case on causation, the plaintiff must show that the product caused his injuries and that a warning would have altered his behavior. See Anderson v. F.J. Little Mach. Co., 68 F.3d 1113, 1115 (8th Cir. 1995) (citing Arnold v. Ingersoll-Rand Co., 834 S.W.2d 192, 194 (Mo. 1992) (en banc)). Tenbarge's treating physician, Dr. Richard Chusak, testified that the Bazooka caused the onset of Tenbarge's CTS, testimony that we earlier found to be sufficient evidence of causation. See Tenbarge, 128 F.3d at 659.

Under Missouri law, a rebuttable presumption that adequate warnings would have been heeded arises if the plaintiff shows that no warning was given. See Arnold, 834 S.W.2d at 194; Duke v. Gulf & Western Mfg. Co., 660 S.W.2d 404, 419 (Mo. Ct. App. 1983). The presumption should be recognized, however, only if there is a "legitimate jury question whether the plaintiff did not already know the danger." See Arnold, 834 S.W.2d at 194. "[A] preliminary inquiry before applying the presumption is whether adequate information is available absent a warning." See id.

Tenbarge was not told of any risks associated with using the Bazooka when he first began using the tool. No analysis of ergonomic risk factors had been conducted on the Bazooka; thus, no literature was available that could have informed Tenbarge of the risks involved in using the Bazooka. Accordingly, because a jury could find that he had no previous knowledge of any danger when he began using the Bazooka, Tenbarge is entitled to the presumption that he would have altered his behavior had he received an adequate warning. See Tune, 883 S.W.2d at 14.

Ames contends that it produced sufficient evidence showing that Tenbarge would not have heeded a warning had one been given. In 1992 and 1993, when Tenbarge underwent surgery on both wrists, his physician told him that his CTS was caused by the use of the Bazooka. Despite this information, Tenbarge returned to work following the operations and used the Bazooka as before. This post-operative behavior, Ames argues, indicates that Tenbarge would not have followed warnings had they been given.

Although Tenbarge's return to work following the surgeries is relevant to the question whether he would have heeded warnings, we conclude that it is insufficient to entitle Ames to judgment as a matter of law on this issue in light of the fact that Tenbarge returned to work pursuant to his doctor's instructions rather than in knowing disregard of the health risks associated with using the Bazooka.

**B.**

Tenbarge contends that the district court erred by refusing to instruct the jury on his claim of negligent failure to warn. To establish such a claim, Tenbarge was required to introduce evidence establishing the existence of the following elements: (1) that Ames designed the Bazooka; (2) that Ames knew or had reason to know that the Bazooka was likely to be unreasonably dangerous; (3) that Ames had no reason to believe that the Bazooka's users would realize the danger in using it; (4) that Ames failed to use ordinary care in warning Tenbarge of the risk of harm; and (5) that the failure to warn directly caused the injury. See Spuhl v. Shiley, Inc., 795 S.W.2d 573, 578 (Mo. Ct. App. 1990). In addition, the product must malfunction or fail. See id. at 580.

It is uncontested that Ames designed the Bazooka and offered no warning concerning its use. Tenbarge presented evidence through the testimony of Robert Zdravecky, Ames's president, that the company knew of the repetitive motion required to use the Bazooka. Evidence that use of the Bazooka presented ergonomic risk factors was sufficient to show defective condition. The risk of developing CTS by using the Bazooka was not so open and obvious as to allow Ames to assume that users would understand the danger in using it. Furthermore, Tenbarge made a prima facie showing of causation, as discussed in the analysis of his claim of strict liability failure to warn. Accordingly, the district court should have submitted Tenbarge's negligent failure to warn claim to the jury.

**IV.**

Tenbarge contends that the district court erred in limiting his cross examination of Zdravecky. Having reviewed the record, we cannot say that the district court clearly abused its discretion in so ruling. See Adams v. Fuqua Indus., Inc., 820 F.2d 271, 273 (8th Cir. 1987).

In light of our holding, we need not address Tenbarge's remaining allegation of error. The judgment is reversed, and the case is remanded for a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.