# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-2143

———————————————

Estate of Douglas M. West, by the co-executors Douglas J. West and Mark P. West

*Plaintiff - Appellant*

v.

Domina Law Group, PC LLO; Christian Williams; David Domina; Brian E. Jorde

*Defendants - Appellees*

——————

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

——————

Submitted: May 14, 2020
Filed: December 3, 2020

——————

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

——————

WOLLMAN, Circuit Judge.

The Estate of Douglas M. West (the Estate) appeals from the district court's[1] denial of its motion for a new trial under Federal Rule of Civil Procedure 59(a)(1)(A),

———————————————

[1]The Honorable Helen C. Adams, Chief Magistrate Judge for the Southern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

contending that the district court erred in admitting certain testimony by Domina Law Group's (DLG) expert witness. We affirm.

Douglas M. West and Mark Finken co-founded Western Marketing Associates Corporation (Western Marketing) in 1988. As a result of disagreements between the two, West hired DLG in 2013 to represent him. In 2014, DLG filed on West's behalf a request for the judicial dissolution of Western Marketing. Pursuant to governing Nebraska law, Western Marketing elected to purchase West's shares at their fair market value, see Neb. Rev. Stat. § 21-2,201(a), (d), which in January 2015 the state court in the dissolution proceedings determined to be $658,000. On June 12, 2015, Finken and Western Marketing filed an amended dissolution petition against West seeking damages for his alleged pre-dissolution misconduct.

West died on November 21, 2015, one day after the jury's decision awarding Western Marketing some $30,000 in compensation and punitive damages. His estate thereafter brought a legal malpractice action against DLG, alleging that DLG had failed to fully advise West of the consequences of filing for judicial dissolution. Specifically, the Estate claimed that DLG had not advised West that the filing of a dissolution petition would enable Western Marketing to elect to purchase West's shares and that its election to do so would irrevocably commit West to the dissolution process. The Estate contends that in the absence of a commitment to dissolution, West could have sold his shares to Western Marketing for $3.2 million under a Buy-Sell Agreement between Finken and himself, or to his brother Mark West for $4.8 million based on a stock purchase agreement between the two of them.

Both parties filed pretrial expert reports. The Estate's expert, Mark McCormick, concluded that DLG had breached the standard of care by failing to fully advise West about election and irrevocability. McCormick opined that DLG's attorneys did not understand those concepts and thus could not have adequately informed West about them. DLG's expert, Steven Wandro, concluded that DLG had

met the standard of care even if it had not specifically discussed election and irrevocability. He also concluded that there was insufficient evidence to support the assertion that DLG failed to understand the Nebraska dissolution statute and that it had failed to inform West of the potential consequences of electing to proceed thereunder. After reviewing a DLG attorney's affidavit that described the attorney's discussions with West, Wandro filed a supplemental report that amended his response to McCormick's opinion. In light of the attorney's affidavit, Wandro reiterated that the attorney's conduct met the standard of care and concluded that DLG had advised West regarding the consequences of election and irrevocability.

Defense counsel asked Wandro six hypothetical questions at trial, each of which told Wandro to assume that DLG had met with West on a specific date to discuss dissolution, and then asked whether DLG had met the standard of care. For example, the first hypothetical question asked:

> I'd like you to assume a couple things before these letters were written just to determine whether or not this makes a difference. I'd like you to assume before that, before these two letters were written, that there was a conference that occurred between David Domina and Douglas West in Phoenix on June 21st, 2013; at the time of the conference, Mr. Domina shared with Mr. West the corporate dissolution process, including the filing of such a process, the opportunity by the other shareholder to purchase their interests, and opportunity for the parties to settle and, if not, for the Court to determine through liquidation or by valuing the shares of Mr. West for purchase by the company or the shareholder.
>
> Assuming that that particular conversation occurred, I want to just ask you -- also I want you to assume that during that conversation that West was told that once dissolution was selected, there was no going back, it was irreversible.

Do you have an opinion within a reasonable degree of certainty whether such a conference would meet the standard of care for attorneys in Iowa representing clients in similar legal proceedings?

In response to each hypothetical question, Wandro testified that, in his opinion, the DLG attorneys had met the standard of care. The district court overruled the Estate's objections to each of the hypothetical questions. After a six-day jury trial, the jury found in favor of DLG.

The Estate argues that Wandro's testimony exceeded the scope of his expert report and therefore violated Rule 26 of the Federal Rules of Civil Procedure. The Estate claims that the hypothetical questions set forth factual scenarios based on unknown, undisclosed evidence that exceeded that set forth in Wandro's report.

We review for abuse of discretion a district court's decision to admit expert testimony. See Am. Auto Ins. Co. v. Omega Flex, Inc., 783 F.3d 720, 722 (8th Cir. 2015) (standard of review); see also Farmland Indus., Inc. v. Morrison-Quirk Grain Corp., 54 F.3d 478, 482 (8th Cir. 1995) ("[T]he district court maintains broad control over Rule 26[] issues regarding the disclosure of the substance of an expert's testimony.").

Rule 26 requires the disclosure of the identity of any expert witness the parties intend to call at trial. The disclosure must be accompanied by a written report from the expert that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The report must be supplemented if "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The report and any supplementation allow the opposing party "a reasonable opportunity to prepare for effective cross

examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendment.

We conclude that the district court did not abuse its discretion in admitting Wandro's responses to defense counsel's hypothetical questions. At all times, Wandro maintained that DLG had met the standard of care. Wandro's supplemental report clarified that he believed that DLG's discussions with West met the standard of care and "[were] sufficient to advise and communicate with Mr. West the potential consequences of filing for judicial dissolution." We reached a contrary result in Tenbarge v. Ames Taping Tool Sys., Inc., 190 F.3d 862, 865 (8th Cir. 1999), in which we concluded that a Rule 26 violation occurred when the expert, who had opined that rheumatoid arthritis was one of many possible causes of plaintiff's injury, changed his opinion at trial by testifying that rheumatoid arthritis was the "major cause." We held that the expert's "newly arrived at conclusions" on the "key issue at trial" contrasted sharply with his previous disclosures and "resulted in a fundamental unfairness" that could be remedied only by the grant of a new trial. Id. In so holding, we repeated our court's earlier observation that "[d]iscovery of expert opinion must not be allowed to degenerate into a game of evasion." Id. (*quoting* Voegeli v. Lewis, 528 F.2d 89, 97 (8th Cir. 1977)).

Wandro's testimony did not add factual bases to support his opinion beyond what his supplemental expert opinion disclosed. His opinion that the attorneys had met the standard of care was based on his conclusion that DLG had advised West about election and irrevocability, which in turn was based on his inferentially drawn conclusion that the attorneys had discussed judicial dissolution. The Estate's hypotheticals offered the same bases for Wandro's opinion, an assumption that election and irrevocability had been discussed by a DLG attorney. See Barnes v. Omark Indus., Inc. 369 F.2d 4, 8 (8th Cir. 1966) (finding no error in admission of expert's answers to hypothetical questions because an expert "witness' opinion [can be based] on any combination of facts"). We thus conclude that the district court did

not abuse its discretion in allowing Wandro's answers into evidence and properly denied the Estate's motion for a partial new trial.

Our holding is buttressed by the district court's lengthy, point-by-point explanation of why any error in admitting Wandro's testimony was harmless in light of its minimal prejudice, it unsurprising nature, its subjection to a "garbage in, garbage out" attack during trial, its lack of impact, and its proponent's lack of bad faith introducing it. On the last point, we do not disagree with the court's statement that though "[it] is not endorsing DLG's discovery conduct, any evidence of bad faith is outweighed by the other . . . factors."

The judgment is affirmed.

_____